UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ROSEMARY CHATTELLE,           )
MICHAEL CHATTELLE,            )
            Plaintiffs        )
                              )
vs.                           )          03 CV12239-MAP
                              )   C.A. No. 03-~~12238 NG~~
VIRIATO M. FIALLO, M.D.;      )
BAYSTATE MEDICAL CENTER;      )
HUBBARD REGIONAL HOSPITAL;    )
LUIGI QUERUSIO, M.D.          )
            Defendants        )

MOTION OF THE DEFENDANT, VIRIATO M. FIALLO, M.D., TO COMPEL
PRODUCTION OF EXECUTED AUTHORIZATIONS FOR RELEASE OF OUT OF
STATE MEDICAL RECORDS AND EMPLOYMENT RECORDS

Now comes the defendant, Viriato M. Fiallo, M.D., and requests that this

Honorable Court enter an order compelling the plaintiffs to execute and deliver to

counsel for the defendant written authorizations for the release of medical records from

providers located in the State of Connecticut. The defendant also requests that the

plaintiff be required to execute authorizations for release of her employment records,

which are also located in the State of Connecticut.

## BACKGROUND

This is a medical malpractice action in which the plaintiffs allege, inter alia, that

Dr. Fiallo was negligent in providing surgical care to Rosemary Chattelle in February,

2001, allegedly leading to an intraabdominal infection and multiple additional surgeries.

(Exhibit A, Report of plaintiff's expert, Bernard Dolin, M.D.). Ms. Chattelle resides in

Connecticut and has received a significant amount of medical care and treatment from

providers located in Connecticut. (Exhibit B; Plaintiff's Answers to Defendant, Viriato

M. Fiallo, M.D.'s,, Interrogatories; Answer No. 8). In her answers to interrogatories, the

plaintiff identified receiving treatment from the following providers:

> Leonard Averill, M.D.
> The Ob/Gyn Center of Putnam
> 320 Pomfret Street
> Putnam, CT 06260
>
> Day Kimball Hospital
> 320 Pomfret Street
> Putnam, CT 06260
>
> Sandra-Gail Epstein, Ph.D.
> P.O. Box 369
> Woodstock, CT 06260
>
> Yunus Pothiawala, M.D.
> 28 Park Street
> Putnam, CT 06260
>
> Tri State Rehab & Sports Medicine
> 35 Kennedy Drive
> Putnam, CT 06260
>
> Wai Lang Lau, M.D.
> Woodstock Medical Group, PC
> 168 Route 171
> Woodstock, CT 06281

(Exhibit B; Answer No. 9). In her answers, Ms. Chattelle indicates that her treatment

with Dr. Averill and Day Kimball Hospital were for complaints relating to a rectovaginal

fistula, the same condition for which she sought treatment by the defendants. (Exhibit B;

Answer No. 9). In addition, the plaintiff claims to have sought treatment from Sandra-

Gail Epstien, Ph.D. and Yumus Pothiawala, M.D. for emotional distress allegedly

sustained as a result of the defendants' alleged negligence. (Exhibit B; Answer No. 24).

Ms. Chattelle further claims that she has been unable to work from November,

2000 to the present as a result of the defendants' alleged negligence. (Exhibit C;

2

Plaintiff's Answers to the Defendant, Luigi Querusio, M.D.'s, Interrogatories; Answer No. 11). At the time of her treatment, Ms. Chattelle was employed by Frito-Lay in Dayville Connecticut. (Exhibit B; Answer No. 12). Prior to her employment with Frito-Lay, she had worked for a number of years as a machine operator for Moldex in Putnam, Connecticut. (Exhibit B; Answer No. 12).

Because these medical providers and employers are located out of state and not subject to a subpoena issued in Massachusetts, counsel for Dr. Fiallo wrote to plaintiff's counsel requesting that the plaintiff execute written authorizations permitting defense counsel to obtain these records directly from the providers. (Exhibit D; Letter dated December 9, 2005). In response, plaintiff's counsel indicated that it was not the policy of his office to provide signed authorizations for records. (Exhibit E; Letter dated December 12, 2005). According to the Joint Statement of the Parties filed in this case, all non-expert discovery is to be completed by February 28, 2006. Dr. Fiallo now moves that this Court issue an Order compelling the plaintiffs to execute said authorizations as the requested medical records are clearly relevant and discoverable, and written authorizations signed by Ms. Chattelle constitute the most efficient and expeditious manner for the defendant to obtain the records.

ARGUMENT

In bringing this personal injury action against the defendants, the plaintiffs have placed Ms. Chattelle's medical condition and treatment directly at issue. It is necessary for defense counsel to obtain the above referenced records in order to fully investigate the plaintiff's claims of malpractice against Dr. Fiallo, including the nature and extent of

plaintiff's alleged damages. Thus, Ms. Chattelle's medical records are highly relevant and discoverable pursuant to Fed. R. Civ. P. 26(b).

The plaintiff should not be allowed to seek money damages for physical injuries and disability and at the same time prevent the defendant from reviewing records which bear directly on those issues. The United States Supreme Judicial Court has held that compliance with the rules of civil procedure is not accomplished if the parties make responding to discovery some kind of game. In fact, the Court has long expressed its sentiments in promoting disclosure by stating that "[m]odern instruments of discovery serve a useful purpose . . . They together with pretrial procedures made a trial less of a game of blindman's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." United States v. Proctor & Gamble Co., 356 U.S. 677, 682 (1958). The Court has further commented that "[d]iscovery is one of the working tools of the legal profession . . . It seems clear and long has been recognized that discovery should provide a party access to anything that is evidence in his case." Hickman v. Taylor, 329 U.S. 495, 515 (1947).

Since the above providers and employers are located in the State of Connecticut, they are not subject to a subpoena issued in Massachusetts. The most efficient and expeditious method by which the defendants can obtain the records is by written authorizations executed by Ms. Chattelle. Dr. Fiallo requests that this Court enter an order requiring the plaintiffs to provide executed authorizations to counsel for the defendant so that the records may be obtained, and discovery completed, in a timely and efficient manner. Counsel for Dr. Fiallo will agree to provide plaintiffs' counsel with a complete copy of all records produced.

Alternatively, if this Court is not included to order the plaintiffs to provide the written authorizations, the defendant requests that this Court order the plaintiffs to pay for the costs of obtaining the records which would require the additional time and expense of retaining Connecticut counsel and filing an action for discovery in the State of Connecticut. Defense counsel submits that this request is <u>not</u> a request for sanctions against the plaintiffs. Rather, this request is necessitated by the fact that the substantial time and expense of obtaining the records via filing an action for discovery in Connecticut could be avoided if the plaintiffs were to simply execute authorizations for the requested records.

WHEREFORE, the defendant, Viriato M. Fiallo, M.D., requests that this Court enter an order requiring the plaintiffs to execute the attached authorizations for release of medical records and employment records from the State of Connecticut. In the alternative, the defendant requests that the plaintiffs be ordered to pay for the expenses associated with obtaining said records via filing an action for discovery in Connecticut.

Respectfully submitted,

Kevin C. Reidy, BBO#:  567760
Sean M. Ennis, BBO#:  641132
Attorneys for Defendant,
Viriato M. Fiallo, M.D.
MARTIN, MAGNUSON, McCARTHY &
KENNEY
101 Merrimac Street
Boston, MA 02114
(617) 227-3240

5

# EXHIBIT A

BERNARD DOLIN, M.D., F.A.C.S.
132 SOUTH CENTRAL AVENUE
ELMSFORD, NEW YORK 10523
—
TELEPHONE (914) 592-7110

October 5, 2003

SUMMARY:   Mrs Rosemary Chattelle

Enclosed is a review of the medical care given to Rosemary Chattelle, starting on September 1, 2000.  I am a Board Certified General Surgeon and am familiar with the appropriate standards of care involved in Ms. Chatelle's medical history.

Rosemary Chattelle was, at the time, a 44 year old female who had a recto-vaginal fistula and a partially torn anal sphincter, of unknown etiology.  On September 1, 2000, she had a fistula and anal sphincter repair; which was noted to have broken down on the 8th post-operative day, by the presence of stool in the vagina. Rectal fecal impaction compounded the problem. No protective proximal colostomy had been done pre- or post operatively, or even when the fistula had returned.

Seeking another opinion, the patient saw Dr. Charles (GYN) from the Bay State Medical Center in Springfield, MA on November 3rd, 2000, who called Dr Viriato Fiallo (Surgeon) in consultation. He found a "larger than a fingertip" fistula from the lower rectum to the vagina; along with a weak anal sphincter. A colostomy was suggested at the same time that Dr Charles would repair the fistula. He also properly suggested a barium enema to rule out inflammatory bowel disease and/or diverticulitis. This was done, and no abnormality was found.

Electively, on Dec 13, 2000, (five weeks later), she was taken to the OR, by Drs. Charles and Faillo and the repair was done again.  This time a colostomy was done. The distal colon was stapled and brought out through the same wound. It was however, tacked to the proximal colon and opened at one corner to "vent" the distal colon. This created a LOOP-COLOSTOMY, through which the fecal stream exited the proximal colon and allowed entrance into the distal colon. This was unnecessary, since a rectal tube would have accomplished the same venting purpose, without contaminating the distal colon.

The notes indicated that she "did well" and was ready for the reversal of the colostomy.

Six weeks post - operatively,(February 1st, 2001), the colostomy was reversed, and colonic continuity was re-established.  The excised specimen was labeled "loop colostomy". No problem with the end-to-end anastomosis was recorded. Foul smelling drainage was noted to be coming from her dressing three days later, and when the skin was opened, fat necrosis was noted to be present.  Daily trips to the OR followed, for irrigations and necrotic fat debridements.

On the 8th post-operative day, February 9th, 2001 she was explored again, in the OR, by Dr Fiallo, under general anesthesia, and sepsis with necrotic fasciitis was found to be present - with pus extending from the pubis to the costal margin (rib cage). A REPEAT END- COLOSTOMY SHOULD HAVE BEEN DONE AT THE SAME TIME, SINCE A FECAL FEEDING CONTAMINATION WAS OBVIOUSLY PRESENT. Instead, only irrigations and drainage was done

The Operative note statements of Dr Fiallo on Feb 9, 2001, and Dr Imhoff on 2/15, 2001 (dictated four months later, on June 12, 2001, both stated that the abdominal cavity was explored, during surgery and the anastomosis was intact, with no evidence of leakage.   These statements appear to be inconsistant with Mrs. Chatelle's clinical course.

From February 9th to 24th 2001, multiple irrigations and debridements of necrotic tissue were continued, with major pain and fairly large quantities of pain medication and antibiotics -until she was discharged from the hospital.

On March 4th, 2001 She was admitted to Hubbard Hospital in Westminster, MA by Dr Querisio with an acute abdomen, sepsis, disruption of a colon anastomosis and a colo-cutaneous fistula.  Dr Charles transferred the records to Dr Querisio

She was seen on June 5th by Dr Patsos, (Dr Querusio' partner.still  experiencing purulent drainage. (Four months post colostomy closure) and again on June 21st - at which time continued drainage was present, and pus was expressed when pressure was applied to the left lower quadrant-indicating a collection of pus (ABCESS) in the left lower quadrant of the abdomen.

Admitted to Hubbard Hospital once again on June 22nd. Abcess drained on June 23rd, and she was discharged on June 24th.  We are now almost five months post-op from the colostomy closure, and no definitive study or procedure was done to determine the source , or feeder, of the continuing infection.

Drains and packings were done repeatedly until the end of June; and on July 11th, 2001, with continued purulent drainage from the drain sites, and a WBC count of 14,000.  With imaging ,a fistula was finally found coming from the distal colon loop, and contaminating the pelvis, going cephalad and caudad in the abdomen. and exiting through the skin drain sites. Increased antibiotics were prescribed, which partially stabilized, but did not control the infection  because of the continuous fecal feeding and contamination of the abcess cavity . According to the notes, AN ABCESSOGRAM WAS NEVER DONE, from the fistula drain sites.

August 30,2001 (six months post-op) with an "almost dried up recto-cutaneous fistula" she was referred to Dr Bledlay  who correctly suggested an ILEOSTOMY in the right upper quadrant, and then removing the fistula and reestablishing a fresh colo-rectal colostomy. This, in my opinion, should have been done six months previously, after an aggressive search for the obvious fecal-feeding colonic fistula, diversion of the fecal stream and allowing the abcess cavity to heal.

From my review of the records, it is my opinion, based on a reasonable degree of medical certainty, that Drs. Faillo and Querusio deviated from the accepted standards of medical care in the following ways:

1. The temporizing of care with drainage, antibiotics, packings and multiple operative procedures allowing months to go by with pain and suffering by the patient - when an aggressive search for a fairly obvious diagnosis with definitive care; should have been established and treated. See Dr Bleday's consultation note.)

2. Failure to diagnose, in a timely fashion, the presence of an anastomotic disruption, leading to peritonitis, multiple abcess formation and sepsis.


A proper search to identify, document and treat the diagnosis should have entailed fashioning an end colostomy, or ileostomy, well away from the contaminated area - to allow healing. Additionally, any recurrent abcesses should have been followed with an abcessograms for identification and correction of the contaminating sources - and not merely drainage, irrigation and rapid discharge from the hospital. With proper care and treatment, it is more probable that Mrs. Chattelle would not have suffered the damage she has incurred.

Therefore, it is my opinion that Dr. Fiallo, Dr. Querisio, Bay State Medical Center and Hubbard Hospital 's deviation from accepted standards of care, caused or contributed to Mrs. Chattelle's multiple abcesses, peritonitis and sepsis.


Sincerely yours,

Bernard Dolin, M.D.

# EXHIBIT B

12/01, I was totally confined to bed. From 12/01 to 12/02, I was confined to my bed about 60% of the time. From 12/02 to the present date I am confined to my bed about 50% of the time.

Interrogatory No. 6

If you are at present suffering as a result of these injuries, please state in what way and to what extent. In so answering, please indicate if you have any permanent injury as a result of the alleged negligence of the defendant, if so, please describe it fully and in detail as far as you are able.

Answer No. 6

As a direct and proximate result of the defendant's negligence, I am constantly suffering physical, psychological and emotional pain, discomfort, disability, disfigurement, distress and the dysfunctioning of some of my bodily systems. I have undergone multiple surgeries and experienced many post-operative complications, such as infections and tissue necrosis. Also, please see my medical records for additional information.

Interrogatory No. 7

If you received medical treatment as a result of the alleged negligence of Viriato M. Fiallo, MD, please describe it fully and in detail as nearly as you can. In so answering, please indicate whether you received treatment as a hospital or hospitals, and describe such treatment, giving place, dates and whether you received it as an in-patient or an out-patient.

Answer No. 7

Please see my medical records.

Interrogatory No. 8

If you were treated by a physician(s), within ten years of the allegations contained within your complaint to the present, please give the names and addresses of all who treated you, the treatment received, and the dates of each treatment, and the dates of each treatment. In so answering, please indicate each and every physician and/or medical doctor that you consulted with regarding your allegations contained in your complaint.

Answer No. 8

Objection. The plaintiff objects to this interrogatory on the grounds that it is overly broad, unduly burdensome and is not reasonably calculated to lead to the discovery of admissible evidence. Without waiving the foregoing objection, the plaintiff answers as follows:
    1. Leonard Averill, MD

The OB/GYN Center of Putnam
320 Pomfret Street
Putnam, CT 06260

On August 28, 2000, I went to see Dr. Averill, a gynecologist. I saw him for complaints
of a foul smelling discharge from the vagina, which he found to be the result of a
rectovaginal fistula. Following this diagnosis, I was taken to the operating room on
September 1, 2000 by Dr. Averill. I was discharged after surgery and sent home on the
same day.

2.  Day Kimball Hospital
    320 Pomfret Street
    Putnam, CT 06260

On September 9, 2000, I was evaluated in the Emergency Department of the Day Kimball
Hospital. I checked in at 10:36 a.m. and was evaluated by Dr. Ian Cummings, MD, the
emergency department attending physician. I was complaining of sudden vaginal pain
after my recent repair of a rectovaginal fistula. I was admitted to a holding bed and given
Golytely and several enemas. I was diagnosed with a fecal impaction (post-operative).
Following my discharge on September 10, 2000 by Dr. Averill, I was readmitted to the
Day Kimball Hospital on September 11, 2000 and again discharged on September 12th
for home irrigations and wound care to be followed up by Dr. Averill and a general
surgeon.

3.  Baystate Medical Center
    759 Chestnut Street
    Springfield, MA 01199

On November 3, 2000, I was seen in consultation by Dr. Viriato Fiallo, MD, a general
surgeon. Dr. Fiallo noted on rectal examination that there was a connection between the
rectum and the vagina low in the rectum. His plan was to collaborate with a gynecologist,
Dr. Lenny Charles, MD to perform a diverting colostomy and a fistula repair. This repair
was done on December 12, 2000. On February 1, 2001, Dr. Fiallo and Dr. Gregory
Carlson closed the colostomy. On February 8, 2001, I presented with a post-operative
wound infection. The wound was open and treated with antibiotics. Subsequently, I was
taken into the operating room to determine the source of the problem. I had a necrosis of
the fat, fascia and muscle involving rectus muscle from the muscular incision to the level
of the costal margin. I again was returned to the operating room on both February 9th and
10th for further debridement necrotic tissue in my abdominal wall and put under general
anesthesia.

4.  Hubbard Regional Hospital
    340 Thompson Road
    Webster, MA 01570

On March 3, 2001, I spiked a temperature of 103 degrees and was seen by surgeons of the Hubbard Regional Hospital. They believed I had fecal peritonitis with an anastomtic leak. I was admitted to the hospital for intravenous antibiotics and taken down of the anastomsis with temporary colostomy. I was discharged on total parental nutrition home. I was admitted again in mid-June, 2001 for incision and drainage of the abdomen.

     5.  Brigham & Women's Hospital
        Ronald Bleday, MD
        75 Francis Street
        Boston, MA 02115

On October 10, 2001, I saw Dr. Bleday after my many surgeries. He provided a takedown of colostomy and also performed a pelvic floor repair on March 8, 2004.

     6.  Sandra-Gail Epstein, Ph.D.
        Post Office Box 369
        Woodstock, CT 06260

     7.  Yunus Pothiawala, MD
        28 Park Street
        Putnam, CT 06260

     8.  Karl Breuing, MD
        Brigham & Women's Hospital
        75 Francis Street
        Boston, MA 02446

     9.  Tri-State Rehab & Sports Medicine
        35 Kennedy Drive
        Putnam, CT 06260

     10.  Wai Lang Lau, MD
         Woodstock Medical Group, PC
         168 Route 171
         Woodstock, CT 06281

Also, please see my medical records for additional information.

Interrogatory No. 9

Without simply referring to medical records, please state for each occasion on which you or anyone on your behalf had any contact with Viriato M. Fiallo, MD, or with any agent or employee of Viriato M. Fiallo, MD:

     a.  the date, time of day, and duration of the contact and who was present during the contact;

b. the place where the contact occurred;

c. the purpose or reason for the contact;

d. the substance of any conversation with Dr. Fiallo and/or any agent or employee of Viriato M. Fiallo, MD, indicating what was said and by whom;

e. the substance of any conversations that were overheard by you between Viriato M. Fiallo, MD and/or any agent or employee of Viriato M. Fiallo, MD and anyone else; and

f. the nature and extent of any examination, treatment or instructions, directions or advice given to you or anyone on your behalf by Viriato M. Fiallo, MD and/or by any agent or employee of Viriato M. Fiallo, MD.

## Answer No. 9

On November 3, 2000, I was seen in consultation by Dr. Viriato Fiallo, MD, a general surgeon. Dr. Fiallo noted on rectal examination that there was a connection between the rectum and the vagina low in the rectum. His plan was to collaborate with a gynecologist, Dr. Charles, MD to perform a diverting colostomy and a fistula repair. This repair was done on December 12, 2000. On February 1, 2001, Dr. Fiallo and Dr. Gregory Carlson closed the colostomy. On February 8, 2001, I presented with a post-operative wound infection. The wound was open and treated with antibiotics. Subsequently, I was taken into the operating room to determine the source of the problem. I had a necrosis of the fat, fascia and muscle involving rectus muscle from the muscular incision to the level of the costal margin. I again was returned to the operating room on both February 9th and 10th for further debridement necrotic tissue in my abdominal wall and put under general anesthesia. For additional information, please refer to my medical records.

## Interrogatory No. 10

Please identify fully and in complete detail, all statements known to you, which were made by Viriato M. Fiallo, MD, related in any way to the allegations set forth in your complaint. In so answering, please identify all conversations you ever had with Dr. Fiallo, stating what was said and when such conversation took place.

## Answer No. 10

Please refer to my medical records.

## Interrogatory No. 11

If you had any physical injuries, accidents, illnesses, diseases or medical condition of any nature prior or at any time subsequent to the incident referred to in your complaint, please describe fully their natures, giving places and dates.

## Answer No. 11

a. each and every sign or symptom you claim to have suffered as a result of that emotional distress and when it occurred;
b. the duration and frequency that you have suffered from any signs and symptoms of emotional distress;
c. the name, address and specialty of any health care provider, counselor, hospital, clinic or institution where you have been seen, evaluated, diagnosed or treated for any of your signs and symptoms of emotional distress or injury, including the dates of every visit, evaluation, diagnosis or treatment and the substance of the evaluation, diagnosis or treatment ordered; and
d. the name, address, and specialty of any health care provider, counselor, hospital, clinic or institution where you have been seen, evaluated, diagnosed or treated for any and all mental, emotional, drug, alcohol, psychiatric or psychological problem you had at any time prior to the alleged onset of the signs and symptoms you claim evidence your emotional distress in this matter, including the dates of every visit, evaluation, diagnosis or treatment and the substance of the evaluation, diagnosis or treatment ordered.

Answer No. 24

Objection. The plaintiff objects to this interrogatory on the grounds that it is overly broad, unduly burdensome and is not reasonably calculated to lead to this discovery of admissible evidence. Without waiving said objection, the plaintiff answers as follows: As a direct and proximate result of the defendant's negligence and carelessness, since the date of the incident I cannot sleep, I experience fatigue, depression, listlessness, and episodes of sadness and sorrow. I have also become diabetic as a result of the constant surgeries and stress. I continue to experience these episodes of emotional distress on a regular basis. I have seen the following health care providers for my emotional distress:

1. Sandra-Gail Epstein, Ph.D
   Post Office Box 369
   Woodstock, CT 06260

2. Yumus Pothiawala, MD
   401 West Thames Street &
   12 Case Street
   Norwich, CT 06360

Interrogatory No. 25

With respect to any allegation that the defendant failed to inform you with the risks and/or benefits of a certain course of action, please set forth with specificity which risks you allege it was the duty of this defendant to inform and which risks you allege this defendant failed to so inform and the date and occasion when this defendant failed in performing this duty.

Objection. The plaintiff objects to this interrogatory on the grounds that it is overly broad, unduly burdensome and is not reasonably calculated to lead to the discovery of admissible evidence. Without waiving the foregoing objection, the plaintiff answers as follows: Please see Answer to Interrogatory No. 8

Interrogatory No. 12

Please describe in full detail your employment history for the ten (10) years preceding the incident alleged in your complaint to the present, identifying your employer(s), your position(s), dates of employment; salary and reason for leaving

Answer No. 12

Objection. The plaintiff objects to this interrogatory on the grounds that it is overly broad, unduly burdensome, and is not reasonably calculated to lead to the discovery of admissible evidence. Without waiving said objection, the plaintiff answers as follows:

1. Frito-Lay
   1886 Upper Maple Street
   Dayville, CT 06241
   Packer
   1995 until the incident in my complaint
   $12.71 per hour

2. Moldex
   Park Street
   Putnam, CT
   Machine Operator -- I was responsible for injection moldings
   1990-1995
   $8.00 per hour

Interrogatory No. 13

If at the time of the treatment of Viriato M. Fiallo, MD, you were engaged in a gainful occupation, please state the wages, salary or profit you were receiving at the time. In so answering, please describe your occupation stating the name and address of your employer and in what capacity you were employed. If you are working at the present time, please state the wages, salary or profit you are receiving for such work, the nature of your present occupation and the name and address of your current employer. If you are a student, please identify the name of your school and your date of graduation.

Answer No. 13

Please see Answer to Interrogatory No. 12.

Interrogatory No. 14

# EXHIBIT C

of his profession practicing medicine, taking into account advances in their professions and medical resources available to him. The Defendant negligently failed to properly diagnose my medical conditions, problems and subsequent complications. He negligently failed to treat or adequately treat my medical conditions, problems and subsequent complications. Furthermore, the Defendant negligently failed to perform necessary tests and diagnostic procedures necessary to correctly diagnose my presenting medical condition. Finally, the Defendant negligently failed to obtain my informed consent. This caused or substantially contributed to cause the disruption of my rectovaginal fistula repair leading to a large finger sized hole between my rectum and vagina and initiating a series of operations and complications that resulted in multiple surgeries and infections and left me with life long disfigurement, disability and pain.

## INTERROGATORY NO. 11

Itemize all monetary loss sustained by you or by anyone on your behalf, including but not limited to doctors' bills, hospital bills, and any other expenses incurred as a result of the allegations set forth in your complaint.

## ANSWER NO. 11

Plaintiff objects to this interrogatory on the grounds that it is overly broad and burdensome and without limitation in scope. Subject to and without waiving this objection, Plaintiff answers as follows: Day Kimball Hospital, $1,449.36; Trans Care Unit at Hubbard Regional Hospital, $32,804.19; BWPO-DPA Dept. of Pathology, $164.00; Baystate Medical Center, $88,082.13. Brigham & Women's Hospital, $203,672.72. Additionally, as a result of the defendants' negligence I have been unable to work from November 2000 until the present. I was earning $519.23 a week prior to the incident described in my Complaint. I am making a claim for these lost wages from November 2000 to the present. Discovery is ongoing and plaintiff reserves the right to supplement this answer seasonably in advance of trial.

## INTERROGATORY NO. 12

Identify each person you expect to call as an expert witness at the trial, stating as to each person:

c.  Full name, home address and business address;
d.  Educational background;
e.  Experience with similar medical occurrences, injuries, illnesses or disabilities;
f.  The subject matter on which each such person is expected to testify;
g.  The substance of the facts and opinions on which each such person is expected to testify; and,
h.  A summary of the grounds for each opinion of each such person.

# EXHIBIT D

## MARTIN, MAGNUSON, McCARTHY & KENNEY

### ATTORNEYS AT LAW

101 MERRIMAC STREET
BOSTON, MASSACHUSETTS 02114-4716
TELEPHONE: (617) 227-3240
TELECOPIER: (617) 227-3346
WWW.MMMK.COM

A PROFESSIONAL CORPORATION

CHARLES P. REIDY, III
DANIEL J. GRIFFIN, JR.
PAUL R. KEANE
JOHN P. MULVEY
PAUL M. McTAGUE
EDWARD F. MAHONEY
DOUGLAS A. ROBERTSON
KEVIN C. REIDY
STEPHEN M. O'SHEA

SEAN M. ENNIS
ANN M. COLLINS
MICHAEL J. KEEFE*
LYNDA RIESGO JENSEN
MARIA L. MAZUR
LAURA M. MARHOEFER
MICHAEL A. MURPHY+# ^
ANTHONY R. BRIGHTON
MICHAEL B. DOHERTY+
KATHLEEN R. DAYAN
ANNA E. SPEROS
ALEXANDRA CASTRO♦
KAREN M. LODIGIANI■!

SENIOR COUNSEL
RAYMOND J. KENNEY, JR.

OF COUNSEL
NADINE NASSER DONOVAN+#

EDWARD F. HENNESSEY (1949-
EPHRAIM MARTIN (1927-1988)
HAROLD E. MAGNUSON (1938-1999)
CLEMENT McCARTHY (1951-1995)

*ALSO ADMITTED IN CT
+ALSO ADMITTED IN RI
^ALSO ADMITTED IN DC
#ALSO ADMITTED IN NY
♦ALSO ADMITTED IN FL
■ALSO ADMITTED IN NH
! ALSO ADMITTED IN PA

December 9, 2005

David P. Angueira, Esq.
Swartz & Swartz
10 Marshall Street
Boston, MA  02108

      Re:  Rosemary Chattelle, et al
      Vs:  Viriato M. Fiallo, M.D., et al
      <u>USDC No.: 03-*12239-MAP*</u>

Dear Mr. Angueira:

     Enclosed herein please find eleven (11) Authorizations for Release of Information for Leonard Averill, M.D., Day Kimball Hospital, Sandra-Gail Epstein, Ph.D, Yunus Pothiawala, M.D., Tri-State Rehab. & Sports Medicine, Wai Lang Lau, M.D., Connecticut VNA, Inc., VNA of Southern Worcester County, Connecticut Department of Industrial Accidents, Moldex and Frito-Lay.  Kindly have your client same and return to us at your earliest convenience.

     Also, please contact this office with dates when you and your clients are available for their depositions.

     Thank you for your anticipated cooperation.

                    Very truly yours,

                    Kevin C. Reidy

KCR:maq
Enclosures
cc:    Michael H. Burke, Esq.
       Allison K. Blew, Esq.
       Brent A. Tingle, Esq.

# EXHIBIT E



**Swartz & Swartz**
ATTORNEYS AT LAW

*The John & Ebenezer Hancock House on The Freedom Trail*
NUMBER TEN MARSHALL ST., BOSTON, MASSACHUSETTS 02108
617-742-1900   ·   FAX · 617-367-7193

December 12, 2005

Kevin C. Reidy, Esq.
Martin, Magnuson, McCarthy & Kenney
101 Merrimac Street
Boston, MA 02114

**Re:**   **Rosemary Chattelle and Michael Chattelle v . Dr. Virato M. Fiallo,**
**MD, et. al.**
**USDC Civil Action No. 03-cv-12238WGY**

Dear Attorney Reidy:

In regards to the matter stated above and your letter dated December 9, 2005, it is our office policy to not have our client sign authorizations. Please file the appropriate motion with the court to obtain the mentioned records.

Should you have any questions, please contact me at your convenience.

Yours truly

David P. Angueira

DPA/kjb
cc:   Allison K. Blew, Esq.
      Michael H. Burke, Esq.
      Brent A. Tingle, Esq.