UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
SPRINGFIELD DIVISION

_____
ROSEMARY CHATTELLE,           )
MICHAEL CHATTELLE,            )          C.A. NO. 03-12239-MAP
                              )
        Plaintiffs,           )
                              )
        v.                    )
                              )
VIRIATO M. FIALLO, M.D;       )
BAYSTATE MEDICAL CENTER;      )
HUBBARD REGIONAL              )
HOSPITAL; and                 )
LUIGI QUERUSIO, M.D.          )
                              )
        Defendants.           )
_____)

## PLAINTIFFS, ROSEMARY CHATELLE & MICHAEL CHATTELLE'S PROPOSED JURY INSTRUCTIONS

NOW COME the Plaintiffs, Rosemary Chattelle & Michael Chattelle and

respectfully request that the jury be instructed in accordance with the proposed

instructions contained herein.

The Plaintiffs reserve the right to supplement these instructions subject to the

evidence introduced at trial.

Respectfully Submitted,
For The Plaintiffs,
By Their Attorney,

/s/ David P. Angueira
_____
David P. Angueira, Esq.
BBO# 019610
SWARTZ & SWARTZ
10 Marshall Street
Boston, MA  02108
Dated: November 1, 2006          (617) 742-1900

## INSTRUCTION NO. 1

The burden on the Plaintiffs in a civil action, such as this, is to prove the elements of their claims by what is termed a "preponderance of the evidence."

To establish something by a "preponderance of the evidence" means to prove to the jury's satisfaction that something is more likely so than not so.  It is as though there are evenly balanced scales such that, if the Plaintiffs can tip the scales even slightly in their favor, then the Plaintiffs will prevail.

This is not a criminal case, and so the elements of the Plaintiffs' claims need not be proven "beyond a reasonable doubt."

Anything is sufficiently established if the evidence before you satisfies you that it is even only slightly more likely than not, even though there may be doubts still lingering in your minds.

Sargent v. Massachusetts Accident Co., 307 Mass. 246 250, 81 N.E. 825 (1940).

Zezuski v. Jenny Mfg. Co., 363 Mass. 324, 293 N.E.2d 875 (1973).

<u>INSTRUCTION NO. 2</u>

In order to recover for negligence, the Plaintiffs, must prove by a mere preponderance of the evidence three essential elements:

a.    That the Defendants, Viriato M. Fiallo, MD and Luigi Querusio, MD owed a duty or obligation to exercise reasonable care to protect the Plaintiff, Rosemary Chattelle from injury.

b.    That Defendants, Viriato M. Fiallo, MD and Luigi Querusio, MD breached that duty of care which she owed to the Plaintiff.

c.    That the breach of that duty by Defendants, Viriato M. Fiallo, MD and Luigi Querusio, MD proximately caused the injuries and damages sustained by the Plaintiff.

<u>Carroll v. Bouley</u>, 339 Mass. 625, 156 N.E.2d 687 (1959).

<u>INSTRUCTION NO. 3</u>

The Plaintiff seeks to hold Defendants, Viriato M. Fiallo, MD and Luigi Querusio, MD liable for their actions as general surgeons.  This is a special type of negligence case which the law refers to as medical negligence.

In order to recover for medical neglgience, the Plaintiffs must prove by a mere preponderance of the evidence three elements:

a.      First, the Plaintiff, Rosemary Chattelle must establish that Defendants, Viriato M. Fiallo, MD and Luigi Querusio, MD entered into a physician-patient relationship with her, and therefore owed her a duty.  Specifically, Defendants, Viriato M. Fiallo, MD and Luigi Querusio, MD had a duty to exercise the degree of care and skill of the reasonably qualified physician practicing the specialties of internal medicine and performing general surgery in 2000 and 2001, respectively, taking into account advances in the profession and the medical resources available to them in providing care and treatment to the Plaintiff, Rosemary Chattelle.

b.      Second, the Plaintiffs must establish that Defendants, Viriato M. Fiallo, MD and Luigi Querusio, MD treatment fell below the standard of care of the reasonably qualified physician practicing the specialty internal medicine and performing general surgery, taking into account advances in the profession and the medical resources available to them in the profession.  The departures from the standard of good and acceptable medical practice need not be intentional and may simply be an unintentional failure to meet the standard either through an affirmative act or an act of omission or commission.

<u>INSTRUCTION NO. 3 CONTINUED</u>

      c.     Finally, the Plaintiff, Rosemary Chattelle must establish that more likely than not, she suffered some injury or loss as a result of Defendants, Viriato M. Fiallo, MD and Luigi Querusio, MD's failure to meet the standard.

<u>Whipple v. Grandchamp</u>, 261 Mass. 40, 158 N.E. 270 (1927).

<u>Brune v. Belinkoff</u>, 354 Mass. 102, 235 N.E.2d 793 (1968).

<u>Baggs v. Hirschfeld</u>, 293 Mass. 1, 199 N.E. 136 (1960).

<u>Berardi v. Menicks</u>, 340 Mass. 396, 164 N.E.2d 544 (1961).

<u>Semerjian v. Stetson</u>, 284 Mass. 510, 187 N.E. 829 (1933).

INSTRUCTION NO. 4

The first element that the Plaintiff, Rosemary Chattelle must establish in order to recover for medical negligence is the existence of a physician-patient relationship. This relationship is not contested, therefore, Defendants, Viriato M. Fiallo, MD and Luigi Querusio, MD owed the Plaintiff a duty.

It is uncontested that the Defendants, Viriato M. Fiallo, MD and Luigi Querusio, MD held themselves out as physicians practicing internal medicine and performing the specialty of general surgery. Accordingly, they owed the Plaintiff, Rosemary Chattelle a duty to exercise the degree of care and skill of the reasonably qualified physician practicing internal medicine and performing the specialty of general surgery, taking into account advances in the profession and the medical resources available to them.

McCarthy v. Boston City Hospital, 385 Mass. 634, 266 N.E.2d 292 (1974).

Delaney J. Rosenthal, 347 Mass., 143, 196 N.E.2d 878 (1964).

Riggs v. Christie, 343 Mass. 402, 173 N.E.2d 610 (1961).

Levenson v. Ruble, 307 Mass. 562, 566, 30 N.E.2d 840 (1940).

Harriott v. Plimpton, 100 Mass. 585, 588 (1896).

Wilkinson v. Vesey, 110 R.I. 606, 295 A.2d 676, 69 A.L.R. 3d 1202 (1972).

Alexandris v. Jewett, 388 F.2d 829 (1st Cir. 1968).

Brune v. Belinkoff, 364 Mass. 102, 235 N.E.2d 793 (1968).

McCarthy v. Boston City Hospital, 358 Mass. 639, 266 N.E.2d 292 (1971).

<u>INSTRUCTION NO.  5</u>

In an action based on medical neglgeince, such as this, unless Defendants, Viriato M. Fiallo, MD and Luigi Querusio, MD's negligence is so obvious as to be a matter of common knowledge, the only way in which you can properly determine whether or not their conduct was a deviation from good and accepted standards of care so as to constitute negligence is through the testimony of experts.  An "expert witness" is one who, through study or experience, or both, has acquired skill that makes him better qualified than the layperson to form an opinion on the subject in question.  For example, to enable you as jurors to determine whether Dr. Fiallo and Dr. Querusio are liable, it is ordinarily necessary to have an expert testify both as to the accepted standard of care that Dr. Fiallo and Dr. Querusio should be held to and whether Dr. Fiallo and Dr. Querusio's conduct was a deviation from the accepted standard.  Such opinions can also be important in aiding you to determine whether any such deviation from the accepted standard of care was a legal cause of the injury which is the subject of the Plaintiff's Complaint.

<u>Tucker v. Stetson</u>, 233 Mass. 81, 123 N.E. 239 (1919).

<u>Cinis v. Post</u>, 1 Mass. App.Ct. 859, 304 N.E.2d 207 (1973).

<u>Kapp v. Ballantine</u>, Mass. 402, N.E.2d 463 (1980).

<u>Nevanranta v. Koski</u>, 335 Mass. 760, 138 N.E.2d 376 (1956).

<u>Presson v. Crane</u>, 32 Mass. 197, 295-299, 73 N.E.2d 246 (1947).

See <u>Whipple v. Grandchamp</u>, 261 Mass. 40, 158 N.E. 270 (1927).

<u>Gill v. Northshore Radiological Associates, Inc.</u>, 409 N.E.2d 248, 1980 Mass. App. Adv. Sh. 1711 (1980).

<u>INSTRUCTION NO.  6</u>

If you find that Defendants, Viriato M. Fiallo, MD and Luigi Querusio, MD were negligent in any respect, then you will find that they are liable to the Plaintiff if you also find that their negligence was a proximate cause of injuries to the Plaintiff.

You will find that Dr. Fiallo and Dr. Querusio's negligence was a proximate cause of injury to the Plaintiff if you find that their failure to act in a careful way, or their acting in a careless way was a cause in producing the Plaintiff, Rosemary Chattelle's injuries. Dr. Fiallo and Dr. Querusio's negligence need not be the only cause or causes for you to find for the Plaintiffs.

Many factors or things, or the conduct of two or more persons, may operate at the same time, either independently or together, to cause injury or damage; and in such a case, each may be a proximate cause.

If you find that the Defendants were negligent, such negligence may be deemed the proximate cause of the injury even though the defendant could not have foreseen the precise form and manner of the occurrence and even though it may not have foreseen the exact train of events by which the occurrence was produced.

Proximate cause is not necessarily that which is next or last in time or place. There can be more than one proximate cause.  Neither need it be the sole cause. Proximate cause is simply the legal cause of the injury and it is for you, the jury, to determine.  If you find that it was more likely than not that the injury was caused, even in part, by the Defendants' negligence, then you must find for the Plaintiffs.

## INSTRUCTION NO. 6 CONTINUED

Leveille v. Wright, 300 Mass. 382, 15 N.E.2d 457 (1938).

Wilborg v. Denzell, 359 Mass. 279, 268 N.E.2d 855 (1971).

Horne v. Meakin, 115 Mass. 326 (1874).

Young v. New York N.H. R.R., 273 Mass. 566, 174 N.E. 318 (1931).

Sargent v. Massachusetts Accident Co., 307 Mass. 246, 29 N.E.2d 825 (1940).

Hill v. Winsor, 118 Mass. 251 (1875).

Roche v. Alber, 302 Mass. 155, 69 N.E.2d 466 (1939).

Wing v. Morse, 300 A. 2d 491 (Me. 1973).

Walther v. Omaha Public Power Dist., 412 F.2d 1164 (8th Cir. 1969).

<u>INSTRUCTION NO.:7</u>

Performance of medical treatment by a physician without the patient's informed consent constitutes professional misconduct and is malpractice.

Defendants, Viriato M. Fiallo, MD and Luigi Querusio, MD had a duty to disclose in a reasonable manner sufficient information to enable the Plaintiff to make an informed judgment whether to give or withhold her consent to each procedure that was performed.

Dr. Fiallo and Dr. Querusio had a duty in a reasonable manner to disclose to the Plaintiff, Rosemary Chattelle all significant medical information that they possessed or should have possessed.  The Defendants had a duty to advise the Plaintiff of information material to her decision to undergo or forego treatment.

Whether the information is material to an intelligent decision by the Plaintiff to undergo or forego proposed treatment is a determination that you as lay person are qualified to make without the aid of an expert.

If you believe that Dr. Fiallo and Dr. Querusio failed to provide information which was material to an intelligent decision by the Plaintiff to undergo or forego treatment; and, if you believe that the undisclosed risk materialized; and, if you believe that neither the Plaintiff nor a reasonable person under similar circumstances would have consented to such a proposed treatment had they known of the undisclosed risk, then you must find that Dr. Fiallo and Dr. Querusio were negligent.

<u>Harnish v. Children's Hosp. Med. Center</u>, 387 Mass. 152, 439 N.E.2d 240 (1982).

<u>Halley v. Birbiglia</u>, 390 Mass. 540, 458 N.E.2d 710 (1983).

<u>Precourt v. Frederick</u>, 395 Mass. 689, 481 N.E.2d 1144 (1985).

<u>INSTRUCTION NO. 8</u>

The purpose of the requirement that doctors disclose information to patients is to protect the patient's right to decide for himself or herself.

Every competent adult has the right to forego treatment, or even cure, if it entails what for him or her are intolerable consequences or risks however unwise this sense of values may be in the eyes of the medical profession.

<u>Harnish v. Children's Hospital Medical Center</u>, 387 Mass. 152, 439 N.E.2d 240 (1982).

INSTRUCTION NO. 9

If  Dr. Fiallo and Dr. Querusio, as an aid to their treatment of the patient which is the subject of this action, did not take into account advances in the profession and medical resources available to them so that they could obtain the best data on which to predicate their diagnosis and course of treatment, you should consider this as a factor in determining whether or not their failure to properly treat the Plaintiff constituted negligence.

Wilkinson v. Vesey, 110 R.I. 606, 295 A.2d 676, 69 A.L.R.3d 1202 (1972).

Clark v. United States, 402 F.2d 950 (4th Cir., 1968).

Lambert v. Michel, 364 So. 2d 248 (la. App., 1978).

In re Davies' Estate, 197 Neb. 320, 248 N.W.2d 344 (1977).

Kuhn v. Banker, 133 Ohio St. 304, 13 N.E.2d 242, 115 A.L.R. 292 (1938).

Cicarone v. United States, 350 F.Supp. 554 (E.D. Pa., 1972), affd. 486 F.2d 253 (3rd Cir. 1973).

<u>INSTRUCTION NO. 10</u>

The Defendants, Viriato M. Fiallo, MD and Luigi Querusio, MD in treating Plaintiff, Rosemary Chattelle were required to use the degree of skill and care of the reasonably qualified physician practicing internal medicine and performing the specialty of performing general surgery, taking into account advances in the profession and medical resources available to them.

As applied to physicians and surgeons, negligence is the failure to exercise and apply that degree of care and skill that the reasonable practitioner with similar training and experience would exercise and apply under the same or similar circumstances. It is the doing of something that the reasonable practitioner with similar training and experience would not have done, or the failure to do something that the reasonable practitioner with similar training and experience would have done, if faced with the same or similar circumstances.

The "skill" as used in this standard is something more than the mere minimum competence required of any person who does an act. It is that special competence that is not part of the ordinary equipment of the reasonable person, but that is the result of acquired learning and aptitude developed by special training and experience. In determining the standard to apply to any particular medical practitioner, therefore, it is necessary to consider the degree of skill, and any particular type of skill that the particular practitioner professes to have attained. For example, a general medical practitioner is held to that degree of care and skill that the average general practitioner would exercise and apply under the same or similar circumstances, whereas a practitioner holding {himself} {herself} out to the public

<u>INSTRUCTION NO. 10 CONTINUED</u>:

as a specialist in some particular branch of medicine is held to the degree of care and skill of the reasonably qualified and competent specialist in that field taking into account advances in the profession and the medical resources available to him/her.

Expressed another way, a physician or surgeon undertaking to treat a patient must administer such treatment in accordance with good medical practice. In determining what constitutes "good medical practice," all the facts and circumstances that existed at the time of the treatment must be taken into consideration, including the condition being treated, the condition of the patient, the state of the medial art at the time of the treatment, and the degree of skill reasonably to be expected of the particular practitioner.

If the practitioner, in administering treatment, did something that was not in accordance with good medical practice, or if [he] [she] failed to do something that was required by good medical practice, then [he] [she] may be found to have been negligent. If, on the other hand, the practitioner acted completely in accordance with good medical practice under all of the circumstance that existed at the time, and if [he] [she] performed those actions in a reasonably competent manner, then [he] [she] should not be found to be negligent, even though the treatment had an unfortunate medical result.

<u>Levenson v. Ruble</u>, 307 Mass. 562, 566, 30 N.E.2d 840 (1940).

<u>Harriott v. Plimpton</u>, 166 Mass. 585, 44 N.E. 992 (1896).

<u>Whipple v. Grandchamp</u>, 261 Mass. 40, 158 N.E. 270 (1927).

<u>Boston v. Fountain</u>, 267 Mass. 196, 166 N.E. 736 (1929).

<u>INSTRUCTION NO. 10 CONTINUED</u>:

<u>Marrangian v. Apelian</u>, 286 Mass. 429, 190 N.E. 843 (1934).

<u>Zimmerman v. Litvich</u>, 297 Mass. 91, 7 N.E.2d 437 (1937).

<u>Deward v. Whitney</u>, 298 Mass. 41, 9 N.E.2d 369 (1937).

<u>Vigneault v. Dr. Hewson Dental Co.</u>, 300 Mass. 223, 15 N.E.2d 185 (1938).

<u>Brune v. Belinkoff</u>, 354 Mass. 102, 235 N.E.2nd. 793 (1968).

<u>Stepokoff v. Kantar</u>, 393 Mass. 836, 473 N.E.2nd. 131 (1985).

<u>Simmons v. Yurchak</u>, 28 Mass.App.Ct. 371, 551 N.E.2nd 539 (1990).

<u>INSTRUCTION NO:  11</u>

The fact of a physician-patient relationship is not contested, therefore you must find that Dr. Fiallo and Dr. Querusio owed a duty to the Plaintiff, Rosemary Chattelle.

If you find that Dr. Fiallo and Dr. Querusio fell below the standard of care of the reasonably qualified physician practicing internal medicine and performing the specialty of general surgery in rendering medical care to the Plaintiff, Rosemary Chattelle in any respect, then you must find that they failed to meet their duty and were negligent.

If you find that the plaintiff probably suffered some injury as a result of Dr. Fiallo and Dr. Querusio's departure from the standard of care, then you must find that Dr. Fiallo and Dr. Querusio's negligence was a proximate cause of the Plaintiff, Rosemary Chattelle's injury and that Dr. Fiallo and Dr. Querusio are liable to the Plaintiffs.

INSTRUCTION NO.  12

The Plaintiffs are entitled to a full, fair and reasonable measure of damages for the injuries they sustained.  The object of such compensation is to award the equivalent in money to them for actual past, present and future loss.  You are free to use any reasonable method to determine the amount of such loss.  You should not be disturbed if the total amount of money you are going to award the Plaintiffs is very large.  This amount will be the total amount they will ever be able to recover, now or in the future, for their injuries and for any problems arising in the future because of them, as well as for Plaintiff, Rosemary Chattelle's future pain and suffering.

In making this calculation, you shall consider such sum as will reasonably compensate the Plaintiffs for the pain, discomfort, emotional distress and mental anguish that under the evidence was shown to have been suffered by them as a proximate result of the injuries in question; it is sufficient if the amount of damages is supportable as a just and reasonable inference even if the dollar figure is necessarily an approximation.  The law prescribes no measure by which such damages may be estimated.  It is for your discretion to fix the amount in such sum as under all the circumstances may be just.

Cuddy v. L & M Equipment Co., 352 Mass. 458, 225 N.E.2d 904, 908-909 (1967).

Stella v. Curtis, 238 Mass. 458, 204 N.E.2d 457 (1965).

Lewis v. Springfield, 261 Mass. 183, 158 N.E. 656 (1927).

Ferrara v. Galluchio, 5 N.Y. 2d 16, 152 N.E.2d 249, 176 N.Y.S. 2d 996 (1958).

INSTRUCTION NO. 12 CONTINUED

George v. Jordan Marsh Co., 268 N.E.2d 915, 359 Mass. 244, 46 A.L.R. 2d 762 (1971).

INSTRUCTION NO. 13

With respect to the damages you are instructed that on each and every element of damages as you may find, the standard to be applied is that the Plaintiffs is to receive a full, fair and reasonable measure of damages.  You are free to use any reasonable method to determine the amount of damages that the Plaintiffs are entitled to for their loss.  This is left to your collective judgment.

If you find the Defendants negligent, the Plaintiffs are entitled to recover an award of damages that will place [them] in the position [they] were in immediately before the Defendants; negligent act or omission.  In other words, the Plaintiffs are to be compensated for all past, present, and future harm caused by the Defendants' negligence.

The elements that make up the damages the Plaintiffs may recover include the following:  the reasonable value of necessary medical care to be incurred by the Plaintiff, Rosemary Chattelle in the future; fair compensation for the diminution in the Plaintiff, Rosemary Chattelle's earning power, that is, the loss of [her] capacity to work and earn a living; and general damages consisting of fair compensation for the Plaintiff, Rosemary Chattelle's physical, emotional and mental pain and suffering and [her] reasonably probable future physical, emotional and mental pain and suffering.

There is no specific formula for determining the Plaintiffs' damages for physical, emotional and mental pain and suffering already suffered, and for any pain and suffering that you find the plaintiff is reasonably certain to suffer in the future as a result of the injury caused by the Defendants' negligence.  The damages that you,

<u>INSTRUCTION NO. 13 CONTINUED</u>:

the jury, decide to award for the pain and suffering should constitute what you believe to be a reasonable compensation under the facts of this case.  In determining this amount, you are to be guided by your own experience and sense of fairness.  You may consider the intensity and the duration of the Plaintiff, Rosemary Chattelle's suffering, how much pain was endured following the incident, how intense the pain was, how long the intense pain lasted, and finally, when it ceased, if you believe it has ceased.  You will also consider whether there continues to be pain and whether, from the evidence, it is expected to continue in the future.  You may consider the nature of the injury, the injured person's age and health, and [her] inability to lead a normal life.  If you decide that the injury is permanent and the suffering will continue, you may also consider the probable life expectancy the Plaintiff, Rosemary Chattelle may have, in determining the extent to which the Plaintiff may or may not have been damaged or injured.

In assessing the Plaintiffs' damages, you should take into consideration any evidence presented as to reasonable medical, hospital, or nursing expenses incurred by the Plaintiff, Rosemary Chattelle in the past or to be incurred by the Plaintiff in the future.

In determining the Plaintiffs' damages, you should consider any evidence that has been introduced tending to show that the Plaintiff, Rosemary Chattelle's ability to earn money in the future has been impaired or diminished. In determining the Plaintiffs' award for future damages, you must reduce such award to its present value.  There is no formula on which you can rely in arriving at an amount that reflects the present value of this element of damage.  The assessment of damages for such impairment

<u>INSTRUCTION NO. 13 CONTINUED</u>:

rests largely upon the common knowledge of the jury.  You may consider the following

in reaching this amount: any evidence of earnings before and after the injury; and any

evidence of occupational education, capacity, duties, and experience; and evidence of

opportunity for employment and earnings lost because of the disability.

   In determining the Plaintiffs' damages for mental and emotional distress, you are

to fairly compensate [them] for past, present and future pain and suffering associated with

[their] emotional distress including compensation for mental anguish, nervous shock,

emotional disturbance, depression, anxiety, pain and discomfort.  You may include in

your award any amount that you feel will fairly compensate the Plaintiff, Rosemary

Chattelle for deterioration of [her] health, for medical, psychiatric, psychological, and

mental health counseling expenses, and for impairment of [her] earning capacity resulting

from the emotional distress and mental anguish.

<u>INSTRUCTION NO. 14</u>

The Plaintiff, Rosemary Chattelle is presumed to be in the exercise of due care at the time of injury.  Defendants, Viriato M. Fiallo, MD and Luigi Querusio, MD have the burden of proving that the Plaintiff, Rosemary Chattelle failed to exercise that degree of care which an average, reasonable person ordinarily exercises under like circumstances. The Defendants also have the burden of proving that such a failure, if any, caused her subsequent injuries.

<u>Hill v. Winsor</u>, 118 Mass. 251, 256-268 (1875).

<u>M.G.L.A.</u>, 231, Section 85 (as amended 1969) effective January 1, 1971.

## INSTRUCTION NO. 15

There has been evidence in this case of a subsequent injury that occurred to the Plaintiff, Rosemary Chattelle while under the care and treatment of Dr. Fiallo and Dr. Querusio.  I instruct you that it is the law in Massachusetts that if a person is injured by another person's negligence and uses reasonable care in selecting a physician to treat his/her injuries then the person guilty of negligence in the first place is liable for resulting injuries caused by a physician treating those injuries.  Similarly, if a patient is injured as a result of a physician's negligent treatment and the patient then uses reasonable care in selecting another physician to treat her injuries, then the original physician who negligently caused the first injury is liable for all resulting injuries caused by the second physician treating those injuries.

<u>INSTRUCTION NO. 16</u>

If you find that Plaintiff, Rosemary Chattelle had a preexisting condition prior to the time of any negligence by Defendants, Viriato M. Fiallo, MD and Luigi Querusio, MD and that Dr. Fiallo and Dr. Querusio's conduct were a contributing cause aggravating her preexisting condition, then you may find the Defendants liable and responsible for the aggravated condition caused by Dr. Fiallo and Dr. Querusio's negligence.

<u>Wallace v. Ludwig</u>, 292 Mass. 251, 256, 198 N.E. 159 (1935).

<u>McGrath v. G. & P. Thread Corp.</u>, 353 Mass. 60, 228 N.E.2d 450 (1967).

<u>Fosgate v. Corona</u>, 66 NJ 268, 330 A. 2d 355 (N.J. 1974).

<u>Mack v. Garcia</u>, 433 So. 2d 17 (Fla. 4th D.C.A. 1983).

<u>Graham v. Roberts</u>, 441 F.2d 99, (D.C. Cir. 1970).

<u>Blaine v. Byers</u>, 429 P.2d 811 (Colo. 1963).

<u>Hylton v. Wade</u>, 478 P.2d 690 (Colo. Ct. App. 1970).

<u>Matsumoto v. Kaku</u>, 484 P.2d 147 (ha. 1971).

<u>Washewich v. Lefave</u>, 248 So. 2d 670 (Fla. 4th D.C.A. 1971).

<u>Schwab v. Tolley</u>, 345 S.2d 747, 751 (Fla. 4th D.C.A. 1977).

<u>INSTRUCTION NO. 17</u>

If you find that Defendants, Viriato M. Fiallo, MD and Luigi Querusio, MD were

negligent and caused Plaintiff, Rosemary Chattelle some injury and that she exercised

reasonable care in selecting a doctor to treat her injury then according to the law, Dr.

Fiallo and Dr. Querusio are liable for any additional injuries to Plaintiff, Rosemary

Chattelle caused by the doctor treating her initial injuries.

> "'The law is well settled that, in an action of tort for negligence
> causing bodily injury, the negligence of a physician, properly
> chosen, in treating that injury does not destroy the causal
> connection between that injury and the consequent suffering, even
> though much of the suffering arises from the negligent treatment
> and would not have arisen if the injury had been properly treated.'
> *Sacchetti v. Springer,* 303 Mass. 480, 481 (1939) and cases cited.
> See also, *Selby v. Kuhns,* 345 Mass. 600, 602-603 (1963); *Glicklich
> v. Spievack,* 16 Mass.App.Ct. 488, 397 (1983); Restatement of Torts
> §457 (1965).  Prosser & Keeton, Torts 309-310 (5th ed. 1984).  We
> see no reason why the rule should not apply to physicians whose
> original negligence causes the intervention of a second physician
> who either improperly diagnoses the case and performs an
> unnecessary operation or makes a proper diagnosis and performs a
> necessary operation negligently.

> -<u>Carter v. Shirley</u>, 21 Mass.App.Ct. 503, 488 N.E. 2d 16 (1986),
> *rev. den.* 391 Mass. 1101 (1986).

> "If the negligent actor is liable for another's bodily injury, he is also
> subject to liability for any additional harm resulting from normal
> efforts of third persons in rendering aid which the other's injury
> reasonably requires, irrespective of whether such acts are done in a
> proper or a negligent manner.

> -Restatement (Second) of Torts (1965), § 457.

In the application of well defined and settled principles of law, the Courts in the

Commonwealth have been consistent in decisions which have found that the original

tortfeasor must be held accountable for mistakes or errors made by doctors called upon to

treat injuries caused by the original tortfeasor so long as the plaintiff has exercised due

care in selecting doctors to treat her injuries.

<u>INSTRUCTION NO. 17 CONTINUED</u>

"If in the exercise of reasonable care [she] properly called in the services of Dr. Coxwell, then the plaintiff will not be responsible for the consequences of a mistake made by [her] attending physician, however serious that mistake might be.

-<u>McGarrahan v. N.Y., New Haven and Hartford RR</u>, 171 Mass. 211, 50 N.E. 610 (1898).

Chief Justice Rugg followed that case in deciding:

"The requests of the plaintiff as modified by the judge...were in accordance with *McGarrahan*...and did not go beyond it. The rule there stated is what where a person is injured by another's negligence, and uses reasonable care in selecting a physician..., then the one guilty of negligence is liable for the resulting injuries even though a higher degree of medical skill might have minimized the injuries."

-<u>Hunt v. Boston Terminal Co.</u>, 212 Mass. 99, 98 N.E. 786 (1912).

"If an honest mistake is made by a doctor wisely selected, that is regarded as one of the incidents of the tortious act of the defendant. The injured person cannot with justice be required to insure for himself the most skillful medical attendance. Lack of skill on the part of a physician so chosen is not an independent and disconnected act, but one which rationally may be attributed to the original tort of the defendant.

-<u>Gray v. Boston Elevated Railway</u>, 215 Mass. 143, 147-148, 102 N.E. 71, 73 (1913).

The Restatement (Second) of Torts (1965), § 442A, *et seq,* is clear regarding this issue.

"Where the negligent conduct of the actor creates or increases the foreseeable risk of harm through the intervention of another force, and is a subsequent factor in causing the harm, such intervention is not a superseding cause."

"The intervention of a force which is a normal consequence of a situation created by the actor's negligent conduct is not a

<u>INSTRUCTION NO. 17 CONTINUED</u>

superseding cause of harm which conduct had been a substantial factor in bringing it about.

-<u>id</u>, § 443.

"The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if

>   (a)    the actor at the time of his negligent conduct should have realized that a third person might act so, or

>   (b)    a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or

>   (c)    the intervening act is a normal consequence of a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent."

>   -<u>id</u>, § 447.

<u>INSTRUCTION NO 18</u>

If you find that, relative to any material evidence in the case, the Defendants, Viriato M. Fiallo, MD and Luigi Querusio, MD have been evasive, or have given willfully false evidence, or has falsely professed ignorance concerning a matter about which they are knowledgeable, then you may infer that such conduct supports an inference of consciousness of liability by Dr. Fiallo and Dr. Querusio, and may consider such an inference, together with other direct evidence of liability, as evidence of liability.

<u>Rich v. Finley</u>, 325 Mass. 99, 89 N.E.2d 213 (1949).

<u>Parsons v. Ryan</u>, 340 Mass. 245, 163 N.E.2d 293 (1960).

<u>Olofson v. Kilgallon</u>, 362 Mass. 803, 291 N.E.2d 600 (1973).

<u>Sheehan v. Gorianski</u>, 317 Mass. 10, 56 N.E.2d 883 (1944).