UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROSEMARY CHATTELLE and <br> MICHAEL CHATTELLE, <br> *Plaintiffs* <br><br> vs. <br><br> VIRIATO M. FIALLO, M.D., <br> BAYSTATE MEDICAL CENTER, <br> HUBBARD REGIONAL HOSPITAL, <br> LUIGI QUERUSIO, M.D., | C.A. NO.: 03-12239-WGY |

## THE DEFENDANT, LUIGI QUERUSIO, M.D'S EXPERT WITNESS DISCLOSURE REGARDING JUSTIN MAYKEL, M.D.

Pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure, the defendant Dr. Querusio, provides the following supplemental expert disclosure with respect to the anticipated trial testimony of Justin Maykel, M.D. Dr. Querusio had previously designated Dr. Craig Paterson as a potential trial expert from the medical specialty of colo-rectal surgery. After disclosing Dr. Paterson, and after the expert disclosure deadline had expired, defense counsel was advised by Dr. Paterson that he was leaving surgical practice to accept a position with a pharmaceutical company in North Carolina. Accordingly, he indicated that he would be unavailable to testify at the trial of this matter.

Consequently, counsel for Dr. Querusio immediately arranged to have the case reviewed by Dr. Paterson's partner, Dr. Justin Maykel. Defense counsel for Dr. Paterson provided timely notice to plaintiff's counsel and counsel for the co-defendant, Dr. Fiallo of his intention to substitute Dr. Maykel as a trial witness.

Dr. Paterson is Board certified in general surgery and colo-rectal surgery. Dr. Paterson's education, training and experience are further described in his Curriculum Vitae attached hereto

as Exhibit 1. Dr. Maykel will testify based upon his education, training and experience as it relates to the surgery performed by the co-defendant, Dr. Fiallo, as well as the subsequent surgery performed by Dr. Querusio.

Dr. Maykel will testify regarding the appropriate standards of care as they relate to a general surgeon performing both the original surgical procedure performed upon the plaintiff by Dr. Fiallo, as well as the subsequent emergency surgery performed by Dr. Querusio in March of 2001. Dr. Maykel will also testify regarding the issues of causation and damages. Dr. Maykel further reserves the right to specifically rebut the testimony of any expert witnesses called by the plaintiff at trial.

Dr. Maykel will testify generally regarding the anatomy involved in the surgical procedures performed upon the plaintiff in this case. He will testify regarding the surgical techniques undertaken at the time of the procedure performed by Dr. Fiallo at Bay State Medical Center as well as to surgical technique employed by Dr. Querusio during the emergency surgery performed by him on or about March 3, 2001.

Dr. Maykel will testify that Dr. Querusio's surgery on or about March 3, 2001 was entirely appropriate given the diagnosis of fecal peritonitis. Dr. Maykel will testify that the patient developed this life-threatening complication following her surgery with Dr. Fiallo. Dr. Maykel will testify that Dr. Querusio complied with the standard of care in deciding to immediately take the patient to the operating room. He will testify further that Dr. Querusio appropriately identified the site of the prior anastomosis as the source of the contamination and appropriately treated this complication through emergent surgery.

Dr. Maykel will testify that Dr. Querusio managed the plaintiff's care in an entirely appropriate fashion, and that the surgery he performed on March 3, 2001 more likely than not saved her life.

Dr. Maykel will also testify in detail regarding this patient's postoperative course. He will testify that Dr. Querusio met the standard of care with respect to his postoperative management of this patient. Dr. Maykel will testify that Dr. Querusio ordered appropriate imaging studies as part of the patient's postoperative care. Further, based upon the patient's overall medical condition, Dr. Querusio appropriately waited several months before referring the patient to a tertiary care center for further management. Dr. Maykel will testify that Dr. Querusio's management of this patient leading up to her referral to Dr. Bleday was entirely appropriate and met accepted practice standards.

Dr. Maykel will testify that this patient developed a rectal stump fistula which is a well-known consequence of the surgery performed by Dr. Querusio. Dr. Maykel will testify that Dr. Querusio managed this well-known complication conservatively and appropriately. Dr. Maykel will testify that the standard of care did not require Dr. Querusio to order an abscessogram as opined by the plaintiff's expert, Dr. Dolin. Rather, Dr. Querusio appropriately ordered the more important imaging study, a CT scan, to rule out pelvic abscess.

Dr. Maykel will testify that this patient's care was appropriately managed consistent with accepted practice standards by Dr. Querusio. He will testify that there was nothing that Dr. Querusio either did or failed to do which was a substantial contributing cause of the ongoing medical problems alleged by the plaintiff. Rather, the plaintiff's complications were simply an unfortunate medical result which did not result in any way from negligence or substandard care on the part of Dr. Querusio.

Dr. Maykel further incorporates by reference his attached expert report as Exhibit 2, and he will testify consistent with this report at trial.

Dr. Querusio also incorporates by reference the expert disclosures of the co-defendant, and reserves the right to call at trial any expert disclosed by any co-defendant in this case to testify on behalf of Dr. Querusio at trial.

Finally, with respect to the prior testimonial history on the part of Dr. Maykel, Dr. Maykel has not testified as an expert witness at deposition or at trial within the past four years.

>Respectfully submitted,
>By its attorneys,
>
>/s/Brent Tingle
>BRENT A. TINGLE, BBO# 559974
>Morrison Mahoney, LLP
>250 Summer Street
>Boston, MA 02210
>(617) 439-7527

## Certificate of Service

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on (date).

/s/Brent A. Tingle
Brent A. Tingle, BBO No. 559974

# CURRICULUM VITAE

Date Prepared: October 17, 2006

**Name**           Justin A. Maykel, M.D.

**Address**        Home:                          Office:
                   10 Monmouth Road               67 Belmont Street
                   Worcester, MA 01609            Worcester, MA 01605
                   Phone: (508) 753-2508          Phone: (508) 334-8195
                   Cell:   (508) 726-9673         Fax:    (508) 334-8130

**Email**          maykelj@ummhc.org

**Place of Birth** Worcester, Massachusetts September 14, 1971

**Education**

| | | |
|---|---|---|
| 1989-93 | B.S. | Tufts University, Medford, MA<br>Majors: Biology and Spanish |
| 1991 | | El Instituto Internacional, Madrid, Spain |
| 1998 | M.D. | Tufts University School of Medicine, Boston, MA |

**Post-Doctoral Training**

**Internships and Residencies**

| | |
|---|---|
| 6/98-6/99 | Internship in Surgery, Beth Israel Deaconess Medical Center<br>Harvard Medical School, Boston, MA |
| 7/99-6/01,<br>7/02-6/04 | Residency in Surgery, Beth Israel Deaconess Medical Center<br>Harvard Medical School, Boston, MA |

**Clinical and Research Fellowships**

| | |
|---|---|
| 7/01-6/02 | Clinical Fellowship in Surgical Nutrition and Metabolism<br>Beth Israel Deaconess Medical Center<br>Harvard Medical School, Boston, MA |
| 7/04-6/05 | Clinical Fellowship in Colon and Rectal Surgery<br>University of Minnesota Medical Center<br>University of Minnesota Medical School, Minneapolis, MN |

1

**Licensure and Certification**

    1996, 1998, 1999 United States Medical License Examination, Steps I, II, and III

    2001   License in Medicine
           Commonwealth of Massachusetts Board of Registration in Medicine
           #212159

    2005   American Board of Surgery
           #49973

    2006   American Board of Colon and Rectal Surgery

**Academic Appointments**

| Dates | Position |
|---|---|
| 1996-1998 | <u>Teaching Assistant</u> Gross Anatomy<br>Tufts University School of Medicine, Boston MA |
| 1997-1998 | <u>Instructor</u> Problem Based Learning Course<br>Tufts University School of Medicine, Boston MA |
| 6/01-7/02 | <u>Research Fellow</u><br>Harvard Medical School, Boston, MA |
| 6/98-6/04 | <u>Clinical Fellow in Surgery</u><br>Harvard Medical School, Boston, MA |
| 7/04-6/05 | <u>Clinical Fellow in Colon and Rectal Surgery</u><br>University of Minnesota, Minneapolis, MN |
| 8/05- | <u>Assistant Professor of Surgery</u><br>University of Massachusetts, Worcester, MA |

**Hospital Appointments**

| Dates | Position |
|---|---|
| 7/01-6/02 | General Surgery Moonlighter<br>Caritas Norwood Hospital, Norwood, MA |
| 8/05- | Staff Surgeon<br>UMass Memorial Medical Center, Worcester, MA |

**Major Administrative Responsibilities**

| Dates | Position |
|---|---|
| 1997-1998 | Admissions Committee Interviewer<br>Tufts University School of Medicine, Boston, MA |

| | |
|---|---|
| 1998 | Resident Review Committee Visit, Resident Representative<br>Beth Israel Deaconess Medical Center, Harvard Medical School, Boston, MA |
| 2000-2004 | Housestaff Advisory Committee Representative<br>Beth Israel Deaconess Medical Center, Harvard Medical School, Boston, MA |
| 2005- | Journal Reviewer<br>Diseases of the Colon and Rectum |
| 2005- | General Surgery Residency Interviewer<br>UMass Memorial Medical Center, UMASS Medical School<br>Worcester, MA |
| 2006- | Medical School Interviewer<br>University of Massachusetts Medical School<br>Worcester, MA |
| 2006- | Worklife Committee<br>UMass Memorial Medical Center |

**Professional Societies**

| | |
|---|---|
| 1994 - | Massachusetts Medical Society |
| 2001 - | American College of Surgeons |
| 2002 - | Society of American Gastrointestinal Endoscopic Surgeons |
| 2004 - | American Society of Colon and Rectal Surgeons |

**Awards and Honors**

| | |
|---|---|
| 1998 | <u>Alpha Omega Alpha</u><br>Tufts University School of Medicine, Boston, MA |
| 2004 | <u>Resident Teaching Award</u><br>Harvard Medical School, Boston, MA |
| 2005 | <u>Carl E. Christenson Outstanding Resident Scholar Award</u><br>University of Minnesota, Minneapolis, MN |

3

**Foreign Language**

    Spanish

**Outside Interests**

    Sports, domestic and foreign travel, carpentry, cuisine

**Teaching Experience**

   **1. Graduate and post-graduate medical courses**

      1996-1998    <u>Teaching Assistant</u>, Tufts University School of Medicine
                            Gross Anatomy

      1997-1998    <u>Instructor</u>, Tufts University School of Medicine
                            Problem Based Learning Course

   **2. Local Invited Teaching Presentations**

      2001    Brigham and Women's Hospital, Harvard Medical School
                  Lecturer at Harvard-Longwood Nutrition Grand Rounds
                  Title: Nutrition Support and Hyperglycemia

                  Beth Israel Deaconess Medical Center, Harvard Medical School
                  Lecturer at Surgical Intensive Care Unit Teaching Conference
                  Title: Total Parenteral Nutrition

      2002    Beth Israel Deaconess Medical Center, Harvard Medical School
                  Lecturer at Surgical Grand Rounds
                  Title: Enteral Nutrition: Is There a Benefit to Postpyloric Feeding?

      2004    Beth Israel Deaconess Medical Center, Harvard Medical School
                  Lecturer at Surgical Grand Rounds
                  Title: Colonic Diverticulosis and Diverticular Hemorrhage

      2005    Fairview University Medical Center, University of Minnesota
                  Lecturer at Surgical Grand Rounds
                  Title: Management of Malignant Colorectal Polyps

                  Fairview University Medical Center, University of Minnesota
                  Lecturer at Surgical Grand Rounds
                  Title: Preoperative feeding in the colorectal surgery patient

    2006   UMass Memorial Medical Center, University of Massachusetts
            Lecturer at Family Medicine Grand Rounds
            Title: Update in Colon and Rectal Cancer

    2007   Harrington Memorial Hospital
            Lecturer at Medical-Surgical Grand Rounds
            Title: Medial and Surgical Management of Sigmoid DIverticulitis

**Publications**

   **1. Original peer-reviewed publications**

1. Herron D, Lantis J, **Maykel J**, Basu C, Schwaitzberg S. The 3-D and head-mounted display. A quantitative evaluation of advanced laparoscopic viewing technologies. Surgical Endoscopy 1999; 13(8): 751-5

2. McCowen KC, **Maykel JA**, Bistrian BR, Ling PR. Circulating ghrelin concentrations are lowered by intravenous glucose or hyperinsulinemic euglycemic conditions in rodents. J Endocrinol. 2002 Nov; 175(2): R7-11

3. McCowen KC, Ling PR, Ollero M, **Maykel JA**, Blanco PG, Bistrian BR. Abnormal regulation of serum lipid fatty acid profiles in short gut rats fed parenteral nutrition with lipid. Metabolism. 2004 Mar; 53(3): 273-7

4. Maithel SK, **Maykel JA**, Jackson PA, Kocher O, Mun EC. Laparoscopic resection of an incidentally discovered carcinoid tumor of the terminal ileum. Surg Rounds 2005; 28 (10): 475-485

5. McCowen KC, Ling PR, Ollero M, **Maykel JA**, Blanco PG, Bistrian BR. Liver and skeletal muscle lipids have differing fatty acid profiles in short gut rats fed parenteral nutrition. JPEN 2006 Jan-Feb; 30(1): 27-31

6. **Maykel JA**, Hagerman G, Mellgren A, Baxter NN, Alavi K, Madoff RD. Crohn's colitis: the incidence of dysplasia and adenocarcinoma in surgical patients. Dis Colon Rectum 2006; 49(7): 950-7.

**2. Reviews, chapters and editorials**

1. **Maykel JA**, Bistrian BR. Is enteral feeding for everyone? Crit Care Med 2002; 30(3): 714-16.

2. **Maykel JA**, Pazirandeh S, Bistrian BR. Is there a benefit to postpyloric feeding? Crit Care Med 2002; 30(7):1654-6.

3. **Maykel JA**, Pazirandeh S, Bistrian BR. Beta-blockade and severe burns. Letter to the Editor. N Engl J Med 2002; 346(9): 707-8.

4. McCowen KC, **Maykel JA**, Bistrian BR. Intensive insulin therapy. Letter to the Editor. N Engl J Med 2002; 346(20): 1586-8.

5. Pazirandeh S, **Maykel JA**, Bistrian BR. Hidden nutrition studies. Crit Care Med 2003 Feb;31(2): 662.

6. Pazirendeh S, **Maykel JA**, Bistrian BR. Malnutrition. In: *Encyclopedia of Gastroenterology*, 2003.

7. **Maykel JA,** Fischer JE. Current management of intestinal fistulas. In: Cameron JL, editor. *Advances in Surgery* 2003; 37: 283-99

8. Tawa NE, **Maykel JA**, Fischer JE. Metabolism in surgical patients: protein, carbohydrate, and fat utilization by oral and parenteral routes. In: Townsend CM, editor. *Sabiston's Textbook of Surgery*, 17th edition, 2004.

9. **Maykel JA**, Opelka FG. Colonic diverticulosis and diverticular hemorrhage. Clin Colon Rectal Surg 2004; 17(3): 195-204.

10. Sun M, **Maykel JA**. Ischemic colitis. Clin Colon Rectal Surg (in press).

11/24/2006

Brent A. Tingle
Morrison Mahoney LLP
10 Chestnut Street, Suite 470
Worcester, MA 01608

Dear Mr. Tingle,

I have had the opportunity to review the documents related to the case of Plaintiff Rosemary Chattelle against Luigi Querusio, MD. The specific counts against Dr. Querusio do not appear to be well outlined in the suit as he appears to be being held accountable for occurrences before he met Mrs. Chattelle on 3/3/2001. Regardless, here are my impression of the case.

Mrs. Chattelle underwent surgical repair of a rectovaginal fistula by Dr. Leonard Averill at Day Kimball Hospital on 9/1/00. Unfortunately, that repair failed. She then underwent a second repair on 12/13/2000 at Baystate hospital by Dr. Leroy Charles. At the same time Dr. Viriato Fiallo performed a diverting loop sigmoid colostomy. After the fistula repair had healed, Dr. Fiallo brought her back to the OR on 2/1/04 for colostomy closure. Unfortunately, that operation was complicated by necrotizing fasciitis involving the abdominal wall and required multiple operative debridements, resulting in a large abdominal wall defect and a prolonged hospital stay. Ultimately, she was discharged to the Transitional Care Unit at Hubbard Regional Hospital on 2/24/04.

Seven days later she was transferred to the Hubbard Emergency Room with fevers, tachycardia and fecal drainage from her midline wound. Dr. Querusio was consulted and took Mrs. Chattelle urgently to the operating room for exploration. There he encountered an anastomotic dehiscence and fecal peritonitis. He washed out the abdomen, resected the anastomosis, and created an end colostomy. In addition, several drains were placed along the abdominal gutters and in the pelvis.

Mrs. Chattelle recovered from this operation, returned to the TCU two weeks later, and was discharged home on 4/5/2004. Over the subsequent 3 months her complex abdominal wall wound was managed with close follow-up in the office. This required several trips to the Procedure Room for dressing changes and wound care. She had ongoing purulent drainage from her abdominal wall drain sites, presumably from chronic fistula tracts. In late June, she developed an abdominal wall abscess which was drained operatively. On 7/11/04 she was readmitted to the hospital with a recurrent abdominal wall infection. CT scan and barium enema confirmed the presence of a chronic sinus communicating between the rectal stump and the abdominal wall. This was successfully managed with repeat drainage, local care, and antibiotics.

Recognizing the need for tertiary care services, Dr. Querusio referred Mrs. Chattelle to Ronald Bleday at the Brigham and Women's Hospital in August of 2004. Specifically, this referral was to address the fistula tract, and to close her colostomy and to reconstruct her abdominal wall. Dr. Bleday moved forward with surgery three months later on 12/10/2001.

It is my opinion that Dr. Querusio managed Mrs. Chattelle's case in a textbook fashion. His decision to operate and the specific operation her performed on 3/3/2001 likely saved her life. While her recovery was delayed by a rectal stump fistula, this is a well-known consequence of this operation, particularly when performed on a malnourished patient in an emergency setting. As long as the tract continues to drain, and remains out of circuit from the gastrointestinal tract, patients can do well for long periods of time without resultant infectious complications. That said, when the abdominal wall drainage site healed over, she developed two abdominal wall abscesses which were reopened and drained in a timely fashion.

After discharge from the hospital, Dr. Querusio's care for Mrs. Chattelle was particularly focused on the management of her abdominal wall wound. In managing this, along with local care, she underwent a thorough radiological evaluation including:
1. 3/20/04 CT scan: inflammatory changes in the left lower quadrant involving loops of small and large bowel. There was no evidence for a discrete abscess.
2. 3/24/04 CT scan: Essentially unchanged.
3. 6/5/04 CT scan: No abscess.
4. 7/11/01 Barium enema: rectal stump leak with fistula from the rectum to both the abdominal wall drain sites and the pelvis.
5. 7/13/04 CT scan: No intraabdominal abscess.

Based on Mrs. Chattelle's overall medical condition, multiple recent operations, prior fecal peritonitis, severe malnutrition, and lack of localized abscess or systemic infection, any premature major surgical intervention (I would have waited at least 6 months postoperatively) would have been considered an error in judgment. Recognizing the complicated nature of her care and need for tertiary care services, Dr. Querusio supported her during the healing phase, and referred her in August of 2001 to Dr. Ronald Bleday at Brigham and Women's Hospital. One should note that Dr. Bleday did not move forward with surgery until December of 2001.

While Mrs. Chattelle's long-term medical prognosis is less than ideal, in no way is this a result of the care provided by the defendant Dr. Querusio. A rectal stump fistula is a well defined consequence of this operation and was adequately addressed by Dr. Querusio both intraoperatively and during the postoperative period. While Dr. Dolin states that no definitive study was performed prior to 7/2001 to diagnose the rectal stump fistula (such as an abscessogram), this would have only confirmed Dr. Querusio's clinical suspicion and made no difference in her management. He did the more important imaging study, a CT scan, to rule out a pelvic abscess. The discovery of an undrained abscess would have altered her care, likely via a CT-guided drainage procedure.

In my opinion, Dr. Querusio strictly complied with the standard of care in the treatment of Mrs. Chattelle. There was nothing that he did or failed to do that caused or significantly contributed to her alleged injuries. In fact, I feel as though his decision-making and management choices were exceptional and facilitated her eventual recovery.

Sincerely,

Justin A. Maykel, MD
Assistant Professor of Surgery
Department of Surgery
Section of Colon and Rectal Surgery
UMass Memorial Medical Center