UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| ROSEMARY CHATTELLE, | ) | |
| MICHAEL CHATTELLE, | ) | C.A. NO. 03-12239-MAP |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| VIRIATO M. FIALLO, M.D; | ) | |
| BAYSTATE MEDICAL CENTER; | ) | |
| HUBBARD REGIONAL | ) | |
| HOSPITAL; and | ) | |
| LUIGI QUERUSIO, M.D. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFFS' OPPOSITION TO VIRIATO M. FIALLO, M.D.'S MOTION IN
LIMINE TO PRECLUDE THE PLAINTIFFS FROM INTRODUCING ANY
EVIDENCE THAT ANY CONDUCT OF DR. FIALLOS PRIOR TO FEBRUARY
4, 2001 DEVIATED FROM THE STANDARD OF CARE OR CONTRIBUTED TO
PLAINTIFFS' ALLEGED DAMAGES**

The Plaintiffs filed their expert disclosures on 06/01/2006. In a detailed report by

Dr. Dolin, he has identified several departures from the standard of care by Dr. Fiallo.

The Defendant had chosen only one aspect of Dr. Dolin's disclosure without reference to

his prior opinions which clearly indicate deficient conduct by Dr. Fiallo prior to February

4, 2001. The Plaintiff has attached Dr. Dolin's entire report for the court's benefit as

Exhibit A. For these reasons the Defendant's motion should be denied.

Respectfully submitted,
The Plaintiffs,
By their Attorneys,

/s/ David P. Angueira

_____

Edward M. Swartz, Esq.
BBO # 489540
David P. Angueira, Esq.
BBO # 019610
Swartz & Swartz
10 Marshall Street
Boston, MA  02108
(617) 742-1900

Dated: April 2, 2007

## CERTIFICATE OF SERVICE

I, David P. Angueira, Esquire, do hereby certify that I have served a copy of the within *Plaintiffs' Opposition to Defendant Viriato M. Fiallo, M.D.'s Motion In Limine to Preclude the Plaintiffs from Introducing any Evidence that any conduct of Dr. Fiallo prior to February 4, 2001 Deviated from the Standard of Care or Contributed to Plaintiffs' Alleged Damages* upon the Defendants by mailing same, first class mail, postage prepaid, to all counsel, to wit:

Kevin C. Reidy, Esq.
Martin, Magnunson, McCarthy & Kennedy
101 Merrimac Street
Boston, MA 02114

Brent A. Tingle, Esq.
Morrison, Mahoney & Miller, LLP
250 Summer Street
Boston, MA 02210

/s/ David P. Angueira

_____

Dated: April 2, 2007                David P. Angueira BBO#019610

**BERNARD DOLIN, M.D., F.A.C.S.**
132 South Central Avenue
Elmsford, New York 10523

914 592-7110    Fax 914 592-2233

May 11, 2006

Mr. David P. Angueira
Swartz & Swartz, Attorneys at Law
Number Ten Marshall St.
Boston, Massachusetts 02108

Dear Mr. Angueira:

In response to your request, I have reviewed the clinical case of Mrs. Rosemary Chattelle.

I am a Board Certified General surgeon and a Fellow of the American College of Surgeons. I have been in the practice of surgery in excess of forty years; and am familiar with intestinal surgery  – around which this case revolves.

I have reviewed the following records in connection with my opinions in the medical care rendered to Mrs. Rosemary Chattelle:

  1.  The office, Surgical and Hospital records of Dr Leonard Averill, in regard to the initial
operative care of Mrs Chattelle in August 28, 2000.
  2. The Operative Notes and Records of Drs. Charles and Fiallo at the Baystate Hospital
  3. The Hospital records and notes of the Hubbard Medical Center
  4. The hospital records and notes from The Baystate Medical Center
  5. The office notes and hospital records of Dr Ronald Bleday from the Brigham and Womens
        Hospital.
  6. Deposition of Dr. Viriato Fiallo, dated April 25, 2005
  7. Deposition of Dr. Luigi Querusio, dated April 25, 2005
  8. The plaintiffs' (Mrs. and Mr. Chattelle)  depositions.

The subject was, at the time, a 44 year old Gravida 2 Para 2 female, who underwent an operative repair for a recto-vaginal fistula on September 1, 2000. The etiology of the fistula was unknown. This was done by Dr. Leonard Averil in Putnam, CT, and included a repair of an attenuated anal sphincter as well. No protective proximal colostomy was done. On the ninth post-op day, she reported to the ED with a complaint of passing some stool through the vagina. A rectal fecal impaction was noted and manually removed. The fistula had clearly recurred. She was admitted to the hospital for irrigation and observation, and was discharged on the following day.

On November 3, 2000, Mrs Chattelle went to see Dr. Charles, a gynecologist, who called Dr Viriato Fiallo, a general surgeon from the Bay State Medical Center in Springfield, MA, for a surgical consultation. Examination revealed a "larger than a fingertip" fistula from the lower rectum, to the vagina. A barium enema was properly suggested to rule-out inflammatory bowel disease or diverticulitis.. No evidence of these entities was found.

Dr Fiallo saw Mrs. Chattelle on the same day, and surgery was scheduled for an elective repair of the recto-vaginal fistula. The patient was taken to surgery on December 13, 2000 and the Op. Note reads "Repair of a recto-vaginal fistula by Dr. Charles, followed by a laparoscopic colostomy by Dr. V. Fiallo. The operative description was "A loop of sigmoid colon was brought out, and the proximal end was sutured to the skin and matured(folded out on itself and sutured in place). The distal end was also brought out, and one corner of the stapled distal end was opened for venting purposes and tacked to the proximal ""end colostomy"", as well as the skin." This configuration created a loop colostomy.

The patient was seen by Dr Fiallo on December 27th, two weeks post-operatively, and was "doing well". Subsequent notes indicated that she was doing well and was ready for reversal of the colostomy.

On February 1st 2000, almost six weeks post-operatively, the colostomy was closed. Colonic continuity was re-established and the bowel with the anastomosis, was returned into the abdominal cavity. Dr Fiallo stated that no problems were noted during the procedure.

On February 4th, 2000, the third post-operative day, the nurses noted that a foul smelling drainage was coming from the dressing. Some of the skin staples were removed and the presence of subcutaneous fat necrosis was noted.

On February 5th, the 4th post-op day, purulent drainage was coming from the wound, with a foul odor. The abdomen was distended., especially in the left lower quadrant. All the staples were then removed. The fat necrosis was again noted, and " fascia intact " was recorded in the chart.

February 6th, the 5th post-op day. Tenderness and induration was reported around the umbilicus and the groin. "Will explore the wound to rule out fasciitis" was written in the chart, but this was done at the bedside, under conscious sedation with Versed. No fasciitis was found. The non-viable fat was debrided and the wound was irrigated and packed, With induration up to the umbilicus and down to the groin, this intervention was clearly inadequate.

The following day, February 7th, scattered rhonchi were noted at the lung bases. This would indicate diaphragmatic irritation - secondary to inflammation / infection,. This would be a sign of further extension of the spreading infection. The hospital note read "The fever had gone away and the induration we noted around the incision was completely gone."- Dr. Faillo.

The following day, February 8th, the 7th post-op day, the erythema and induration had increased and the patient was taken to the operating room. Dr. Faillo's Op. Note reads: Liquified or dead posterior fascia is now noted."Necrotic fasciitis found and excised. The wound was left open." "Under general anesthesia, the abdomen was opened. Collections of pus were found from the pubis, through the internal and external abdominal muscles, extending to the costal margin. The rectus sheath was invaded with purulent material, necrotizing the left Rectus abdominus muscle. The hospital note read "This will require multiple returns to the Operating Room".
The Operative Procedure was written as "Irrigation and Debridement of the Abdominal wall.
            The Operative Note states that he found " no purulent material or ascites in the abdominal cavity, and the anastomosis was completely intact, with no evidence of leakage." However, counter-drain incisions were made cephalad and caudad. "to provide better drainage from the skin down to the omentum." (in the peritoneal cavity).
The wound was left open and covered with a biologic material to prevent evisceration. Cultures grew out E. coli and Enterococcus faecalis.

The patient was returned to the OR the following day, and additional abdominal wall muscle was found to be necrotic, and was removed. Mechanical ventilation was required post-operatively, and she was weaned off and extubated on Feb. 11th, the second post-op day.

On February 12th "The debridements were too painful for bedside changes. To the OR in the morning." was written.

On February 13th, Mrs Chattelle was once again brought to the OR and placed under general anesthesia. Dr Timothy Emhoff writes" No further necrosis, debris or infection. Needs to be scheduled for abdominal wall closure ASAP." (Four days after collections of pus were present in the abdominal wall).

On Feb. 14th, the culture report from Feb. 8th shows Clostridium perfringins growing out. The Gentamycin was continued.

February 15, 2001   To the Operating Room again, by Dr.Emhoff.  The Op note says FEB. 15, 2001, but the OP Note was dictated on JUNE 12, 2001. - four months later.
Again under general anesthesia: "minimal drainage". No residual infection noted. He also states that he explored the abdominal cavity and no residual infection or pockets of infected fluid were found. A 10 x 20 cm abdominal wall defect was noted and closed as much as possible.

February 16th, 2001 A Nutrition Consultation was called, and found that on Feb 10th, the serum albumin was 1.7 - severely depleted (Normal is 3.4 - 5.0)   Total protein was 4.3 (Normal is 6.4 to 8.2) This adversely affects the healing process.

February 17th, 2001 WBC (White blood count) was 18,000  "No signs of infection" is noted in the chart.  "Abdomen soft and quiet. Rhonchi that clears with coughing. Epidural catheter placed for pain medication and control."

Feb 19th, 2001  Bowel movement today.

Feb 20, 2001 Psychiatric consultation: Nursing Department: Understandable depressive episode, considering what she has and is going through.

Feb 23, 2001 Still on morphine for pain 15mg given twice on a (8 hour) shift.

Feb 24, 2001 "Tan serous drainage noted on dressing". The patient was discharged on this date. After being discharged from the hospital, Mrs Chattelle was a patient at the Hubbard Transitional Care Unit, which is attached to the Hubbard Hospital.

The next notes reveal that on March 3rd, 2001, the patient presented in the Emergency Department of Hubbard Hospital. Dr Luigi Querusio was on call that evening, and saw the patient for the first time. A diagnosis of peritonitis and sepsis was made, with a colonic anastomotic leak. The temperature was 103 degrees, with fecal drainage from the open part of the wound. She was taken to the OR that evening and explored. Active drainage was found to be coming from a hole in the anastomosis, and that portion of colon was removed. An end colostomy was created from the end of the proximal colon; and the distal colon was closed with staples and returned to the peritoneal cavity. This was the part that subsequently broke down, and provided a continuous contaminated mucosal flow that continued to feed the fistula. When a barium enema was finally ordered, it confirmed the presence and location of the source of the fistula.

Mrs Chattelle was discharged from Hubbard Hospital on March 15, 2001 to the Tertiary Care Unit of Hubbard Hospital, and remained there until April 5th, 2001. She was seen multiple times from April 19th until June 5th, 2001 by members of the "Primary Care Group" (A group contracted with the Hospital to provide surgical coverage).

On May 9, 2001, Outpatient Hubbard Hospital visit : WBC 12,500.

A note by Dr Querusio , dated May 24, 2001 stated the presence of tan colored decreased drainage. This was followed two days later, on June 23rd, with an Incision and Drainage by Dr. Querusio with an irrigation of an abscess.

June 5, 2001 Outpatient visit with Dr. Patsos (Dr. Querusio's associate) "Patient is having pains in the lower abdomen and back. Draining purulent drainage. CT Scan: no abscess identified. Treatment: Finish Cipro and Vicodan. Return in two weeks,"

June 21, 2001 Office visit with Dr Querusio. " Patient continues to drain purulent material thru the sinus tract. LLQ remains tender **and purulent material is expressed when pressure is applied to the left lower quadrant.** Therefore, an abscess collection is present.
"Plan is to re-admit patient and bring her to the OR and do debridement, with incision and drainage, under anesthesia. Question of foreign body or Marlex mesh as the cause of the persistent infection "

June 22, 2001 Admitted to Hubbard Hospital and an Incision and Drainage was done on June 23rd. She was discharged on the following day, June 24th. WBC on admission was 17,900.
Operative Note, dated June 23, 2001. "A fluctuant area just above the left groin was noted and an incision was made and a moderate amount of purulent material was expressed. The wound was irrigated and aspirated A probe was easily passed between the abscess cavity and the sinus tract and brought out to the skin." Further investigation of the source of the abscess was not mentioned.
Office visit to Dr. Querusio on June 28th - five days post Op. "Packing changed. Drain still in place. Afebrile. Small amount of drainage.

July 11th, 2001 Two weeks after latest surgery, Mrs Chattelle was again admitted to the hospital with left lower quadrant abdominal pain and purulent drainage from the previous drain site. WBC was 14,000. A Barium Enema on that day was finally ordered, four months after operating on her, documenting a fistula from the stapled end of her distal sigmoid colon, "which had broken down during the past few months, and emanates through the old drain site in the left lower quadrant." Barium introduced per rectum revealed unobstructed retrograde passage of the barium to the closure point of the distal descending colon. No significant inflammatory involvement of the sigmoid colon, which demonstrated distensibility. At the cul-de-sac, a leak was demonstrated laterally with extravasation of contrast material deep within the pelvis, with most of the contrast material traversing the fistula site, extending cephalad and caudad beneath the skin surface to exit at the previous drain sites., with some pooling under the skin."

Obviously, there was still a continuous feeding source for the ongoing infection. No mention was made of an attempt to close the distal stump hole, or preferably exteriorize it.

Dr Querusio conceded that the breakdown of his distal stump stapled closure, was the complication that caused the continued presence of pain and drainage - four months after the operation.

From July 17, 2001 until November 6, 2001, for almost four months longer, antibiotic enema, ordered by Dr. Querusio twice a day, had been given by nurses, almost daily, with reports of fluid coming from the drain sites.. Symptoms of pain and drainage decreased during these enemata, but increased again when the enemas were stopped or reduced.

August 16, 2001 A note from Dr. Querusio "Drainage almost completely subsided, but she is still on enemas", which he plans to stop.

Note dated August 30, 2001: Recto-cutaneous fistula has "almost dried up". The plan was to refer her to Dr. Bleday at the Brigham Hospital in Boston (a colorectal specialist) for "an assessment for reversal of her colostomy, and the issue of her abdominal wall.".
CLEARLY, THE PATIENT WAS IN NO CONDITION FOR A COLOSTOMY REVERSAL, SINCE THE FEEDING / INFECTION WAS STILL PRESENT AT THAT DATE.

September 9, 2001 : Enema with one gram of Cefazolin in 250cc of normal saline produced a large amount of opaque drainage from her lower drain"

September 13, 2001 Note from Dr Querusio: "Recurring pain again reported. Antibiotic enemata had been reduced or stopped, resulting in increased pain and purulent build up. Mrs. Chattelle therefore reinstituted the enema regime HERSELF , with some relief of the pain and decreased drainage.

October 10, 2001: Consultation letter from Dr. Ronald Bleday.
A solid plan in his report. This consultation, in my opinion, should have been requested months ago. Dr Bleday advised "A takedown of the colostomy with a resection of the top of the rectum, (The area of leakage) and a fresh anastomosis. If there was significant sepsis in the area (which apparently there was), then a diverting temporary ILEOSTOMY, PLACED IN THE RIGHT UPPER QUADRANT, well away from the left lower quadrant, could be constructed with reversal of the ileostomy two to three months later.

Additional notes indicate: October 15th: Cefazolin enema given and returned thru the drain site and rectum.
October 21st. Mrs Chattelle refused further enemata, but restarted them when pain and tenderness returned.
October 24th: Enemata with Cefazolin still being given by rectum with clear return, and no return through the drain site.

Of interest is the fact that a fistulogram had never been done, or even mentioned. Inserting a small amount of gastrografin into the fistula or even the rectum at an early date, may well have outlined the source of the continuing contaminated drainage, and instituted a corrective plan of action, instead of reacting and dealing with the abscesses, as they appeared - and allowing months of pain and suffering to continue.

Of further interest is the fact that notes from Dr Wai Lang Lau, her primary care physician, indicated that the patient's mother was diabetic. Several other physicians mentioned in their H&Ps under the heading FH (Family History), that Mrs. Chattelle's mother was diabetic, but no further investigation ensued. Rosemary Chattelle is a 5'2" woman, weighing 139 - 140 lbs . She was therefore, a strong candidate for diabetes herself, which eventually was diagnosed in June, 2002; as recorded by her primary care physician, Dr. Wai Lang Lau. This required hypoglycemic medication. Normal blood sugars could be attributed to the reduced or NPO diets, to which Mrs Chattelle was subjected during her bowel problems - over long periods of time.

During these years in question, her body mass index (BMI), given the above height and weight, was probably well above 25; and warranted a work-up in this area to detect the pre-diabetic state. I could not find any documented activity on this subject nor could I find a simple glucose tolerance test that was mentioned in the voluminous hospital records. The relevance to her condition is that in such a patient, a prudent surgeon would consider exteriorizing both the proximal and distal bowel stomata, to avoid the presence of any anastomosis or staple closure in

the abdomen until all the infection had subsided - a comfortable two to three month time lapse. Diabetics heal poorly and with poor nutrition, multiple episodes of sepsis with decreased albumin and total protein blood levels, further compromised her tissue's healing ability (both bowel and abdominal wall); and may well have played a part in the bowel surgery that failed twice, with major consequences.

SUMMARY:

A.   Dr. Viriato Fiallo was in charge of the surgical care of Mrs. Chattelle from November 3rd, 2000., when called in surgical consultation by gynecologist Dr Leroy Charles; until she presented at the Emergency Department of Hubbard Hospital on March 3rd, 2001 with sepsis and peritonitis, and then came under the care of Dr.Luigi Querusio.

Dr. Fiallo participated in the dual operation with Dr. Charles on December 13, 2000. A recto-colon fistula repair and protective sigmoid loop colostomy procedure was done. The colostomy was reversed six weeks later. Three days post-operatively, it became apparent that an anastomotic leak had developed.. Daily trips to the operating room followed.  With pus being eventually found in the abdominal wall from the pubis to the costal margin, a repeat end colostomy should have been done with exteriorization of the proximal and distal stomata, instead of repeated and ineffectual irrigations and drainage.  The Operative Note of Dr Fiallo, dictated on February 9th, as well as the Op. Note dictated by Dr.Imhoff FOUR MONTHS LATER on June 12, 2001 - both stated that the abdominal cavity had been explored and the anastomosis was intact, with no evidence of leakage. These statements appear to be inconsistent with Mrs. Chattelle's clinical course; and with the opening found at the anastomotic site by Dr Querusio on March 3rd, 2001 , when the patient presented at Hubbard Hospital with peritonitis and sepsis - about two months after the colostomy had been reversed.

B.   Dr. Luigi Querusio was on surgical call during the late evening of March 3rd, 2001 and was called to the Emergency Department of the Hubbard Hospital to see Mrs. Chattelle; whom he diagnosed as having peritonitis and sepsis. She was taken to the Operating Room on an emergency basis and explored. Disruption of the colon anastomosis was found, with the formation of a colo-cutaneous fistula. The anastomosis was removed and an end-proximal colostomy was done. The distal sigmoid segment was stapled shut and replaced in the abdomen.

Post-operatively, multiple episodes of drainage and abscess formation continued to occur. Again, weeks and months went by before imaging was ordered, and no definitive action was taken. Drainage of an abscess, irrigations and packing, with discharge from the hospital the following day, occurred on several occasions, establishing a pattern of symptomatic reactive temporizing.

DEPARTURES FROM THE STANDARD OF CARE:

1. Based on my education, training and experience, I have knowledge of the standards of care of a reasonably qualified surgeon practicing within the relevant time periods and the medical care, treatment and procedures performed by Sr. Luigi Querusio and Dr. Variato  Fiallo on Mrs. Rosemary Chattelle.

2. I have reviewed all the relevant medical records and discovery information regarding the care and treatment rendered by Dr. Luigi Querusio and Dr. Variato M. Fiallo in this case.

All my opinions are based upon my education, training and experience, and my review of the relevant medical records and discovery materials. All my opinions are within a reasonable degree of medical probability.

It is my opinion that both Dr. Querusio and Dr. Fiallo failed to comply with the appropriate standards of care of a reasonably qualified surgeon, in the care and treatment they rendered to Mrs. Chattelle, specifically, the failure to identify and treat the cause of Mrs. Chattelle's repeated episodes of abscesses, peritonitis and sepsis.  They failed to perform reasonable and appropriate diagnostic tests, such as gastrografin or barium studies and/or fistulograms which would have probably assisted them in an earlier identification of the source of the leak and  contamination, which caused these acute episodes. Failure to determine the source of her repeated infections in a timely manner, and continuing to treat her with repeated drainage procedures, antibiotics, packing and multiple operative interventions - all of which were only addressing the symptoms and not dealing with the origin of these problems. They temporized over an unacceptable period of time, without formulating an appropriate treatment plan and course of action; and should have included one or more diagnostic studies mentioned above to assist them in determining the etiology or cause of her repeated problems. They failed to recognize the failure of their treatment protocol and initiate a new plan to assist in the diagnosis and treatment of Mrs. Chattelle; such as a distant ileostomy or colostomy, well away from the contaminated area, to allow proper healing. They failed to perform abscessograms or fistulograms to identify and remove the contaminating sources.

It is my opinion that Mrs. Chattell has suffered serious and permanent injuries, including  the potential for future episodes of intestinal obstruction, significant adhesions and scaring of the intestinal structures and the abdominal wall . It is my opinion that earlier proper diagnoses of the surgical complications, with the appropriate procedures that were available to them, probably would have identified the sources of contamination at an earlier time and allowed a prudent surgeon to correct these complications thereby reducing the need for Mrs. Chattelle to endure such pain and suffering, repeated medical and surgical interventions and permanent scaring and abdominal wall disfigurment.

From the beginning of her infectious episode on February 4th, 2000 until the colostomy reversal by Dr Bleday in December of 2001 - almost two years - with reconstructive surgical procedures after that, and a still- present ventral hernia; it becomes apparent that the proper standards of care resulting in Mrs. Chattelle's clinical course were not applied to this patient. Following Dr. Bleday's colostomy reversal , her post-operative episode of pulmonary edema and respiratory failure, with no discernable cause; attests to the physiologic attenuation of Mrs. Chattelle's condition.

The above report constitutes my expert medical opinion based on my education, knowledge, training and experience. It is also my opinion, with a reasonable degree of medical certainty, that if Mrs. Chattelle had been formally and openly explored under general anesthesia during the early stages of her anastomotic disruptions, the operative complications would have been corrected and contained with minimal anatomic and physiologic damage.

Signed under the penalties of perjury, on May 11th, 2006.

Bernard Dolin M.D.

Bernard Dolin, M.D., F.A.C.S.
Assistant Professor of Surgery
New York Medical College